Reed, P. J.,
delivered the opinion of the court.
A great deal of testimony was heard upon the trial. The *228 facts of the loan, the taking of the note from Miller, that no security was taken, that Miller was not the owner of any lots on Broadway, that he was heavily indebted and verging upon insolvency at the time, and that nearly all the real estate owned by him was heavily incumbered, and that he shortly after became insolvent, and that the amount for which judgment was obtained was the balance remaining unpaid, were admitted, or established and uncontroverted.
The controversy Avas as to what the transaction was as between plaintiff and defendant, — whether the plaintiff required as a condition to making the loan that defendant should secure a deed of trust upon property upon Broadway, whether defendant made the statements in regard to the wealth and solvency of Miller, whether he agreed to obtain the securities upon the BroadAvay property, and Avliether the statements alleged to have been made bjr the defendant in regard to the ownership of the Broadway property by Miller, and the value of the property, were made, and he agreed with the plaintiff to obtain security upon the property as a condition precedent to making the loan.
On these questions the evidence was very conflicting, the plaintiff endeavoring to establish them and the defendant denying each of them. As to the allegation in regard to the statements made by the defendant in regard to the ownership of the Broadway property, its value, the agreement of defendant to obtain the security, and the refusal of plaintiff to make the loan without the security, the preponderance of the evidence Avas Avith the plaintiff. Her daughter, a young lady of twenty, was present at the interview, and fully corroborated the statements of her mother. On other and minor points the testimony was that of the two parties.
Upon the close of the evidence the court required the jury to answer the following special interrogatories, which they did in the manner shown below, and such special findings were returned with the general verdict:
“ Did plaintiff loan two thousand dollars to Frank A. Miller through defendant Goodale? A. Yes.
*229 “ Did Goodale tell plaintiff that Miller owned three' lots on Broadway either of which was worth the amount of the loan? A. Yes.
“Did Miller own three lots on Broadway? A. No.
“ Did plaintiff tell Goodale either before or after he represented that Miller owned three lots on Broadway that she would not take the loan without security? A. Yes.
“ Did plaintiff rely on Goodale’s statement to her that Miller owned three lots on Broadway either of which was worth the amount of the loan, and that he would procure a trust deed upon the same in giving her consent to make the loan? A. Yes.
“Did Goodale promise to get plaintiff a trust deed upon three Broadway lots ? A. Yes.
“ Did plaintiff entrust to Goodale to procure for her a trust deed on three lots on Broadway? A. Yes.”
The finding of the jury upon the facts submitted must be conclusive, unless some error of law intervened to vitiate the verdict. There are a large number of supposed errors assigned, but those relied upon by counsel and urged in argument are comparatively few.
1. It is contended that the statements made by the defendant to the plaintiff, alleged in the complaint and established by the evidence, in regard to the wealth and responsibility of Miller, were merely matters of opinion, and several authorities are cited to show that representations of that character could not afford a basis for an action, and the contention is ably urged and at considerable length. Counsel in argument should be very guarded in statements of facts disclosed which will, if believed, mislead the court; if found to be untrue, prejudice his case. Although stated to have been mere matters of opinion, for which the defendant could not be held responsible, counsel immediately after attempt to assert the truthfulness of the statements made, in the following language: “ The so-called representation that Miller owned valuable property in Denver and elsewhere in Colorado was shown by the testimony to be true, because at the *230 time of that representation, the undisputed testimony is that Miller owned a large amount of real estate in Denver and in the vicinity of Denver and in Trinidad.”
The evidence of the defendant and of an abstract company was all that was taken to show his wealth, and by both it was shown that, with the exception of some outlying lots, upon which defendant placed a value of $10,000, all of his property consisted in equities in heavily incumbered property. How much he owed in unsecured debts is not shown. In order to apply the authorities, the statement in regard to the wealth and responsibility of Miller is separated entirely from the other important statements made at the same time that Miller was the owner o£ three unincumbered lots on Broadway, either of which was worth more than the desired $2,000, and this was not, as argued, a statement of a mere opinion, but the statement of a fact not depending upon rumor or general reputation. The representations and conversation in regard to the supposed Broadway lots were properly divisible propositions, first, to establish the wealth and responsibility of Miller as a safe person to whom the loan could be made; second, the agreement of defendant, when assured by the plaintiff that she would not make the loan without security, that he would obtain from Miller a deed of trust upon the property. The testimony clearly shows the obtaining of the security was to be a condition precedent, without which no money was to be loaned, and the fraud of the defendant consisted in, first, the falsity of the statements of fact in regard to the responsibility of Miller; secondly, in lending and misappropriating the money in his hands belonging to the plaintiff by loaning to Miller without the agreed security. In our view of the case, either would have rendered the defendant liable, regardless of whether.the action was called one for deceit or in assumpsit for money had and received to her use and converted to his own use.
It is earnestly contended by counsel that “ the general rule is that it is necessary for the party, relying upon the representations, to show not only that they were false, but that *231 the party making the same kneio them to be false.” We do not regard such statement as the law of this state. The earliest case is Sellar v. Clelland, 2 Colo. 532, in which it was said, at p. 544 : “ But when one has made a representation positively, or professing to speak as of his own knowledge on the subject, the intentional falsehood is disclosed, and the intention to deceive is also inferred, or at all events, this is so when the matters falsely represented are peculiarly within the knowledge of the party making them, and are not known to the party to whom they are made. In such a case, the proof would seem to be complete when it was shown that the defendant made the representations; that they were made to induce plaintiffs to enter into the contract; that, relying upon the same, they did enter into the contract; that the representations were false; that the plaintiffs sustained damage, and that such damage was occasioned by reason of the falsity1- of such representations.”
In Lahay v. City Nat. Bank, 15 Colo. 339, Sellar v. Clelland is cited with approval, and the court says d “ When one, as in this case, positively assures another that a certain statement is true, professing at the time to speak of his own knowledge, and about a matter not known to the party to whom the representations are made, he cannot be allowed to complain because another has placed too much reliance upon the truth of what he himself has stated.”. The latter case is so nearly parallel with the case under consideration as to be almost conclusive as to the law governing the case.
In Cooley on Torts, p. 497, it is said: “ It is often said that, in order to render false representations fraudulent in law, it must be made to appear that the party making them knew at the time that they were untrue. But this rule has so many exceptions that it is difficult to affirm, with any confidence that it is a general rple at all.” See Cooley on Torts, pp. 500 and 501; Story’s Eq. Jur., sec. 193; Hilliard on Rem. for Torts, 289; Shark v. The Mayor, 40 Barb. (N. Y.) 256; Craig v. Ward, 36 Barb. (N. Y.) 378; Bennett v. Johnson, 21 N. Y. 238; Marsh v. Falker, 40 N. Y. 562; Meyer v. Ami *232 don, 45 N. Y. 109; Hazard v. Irwin, 18 Pick. (Mass.) 108; Stone v. Denny, 4 Metc. (Mass.) 156; Hemmet v. Emerson, 27 Me. 326; Reynell v. Sprye, 1 DeG. M. & G. 660; Kerr on Fraud & Mistake, 79-81 and 336; Bigelow on Fraud, 63-84 and 453.
2. It is urged in argument that the action against the defendant cannot be maintained for the reason that the evidence established the fact that defendant made the loan as the agent of the plaintiff; consequently, an action for deceit would not lie. By the code forms of action are abolished. There is but one form of action. When the facts are alleged and established by the evidence, if they show the defendant liable, a judgment follows. Under our practice a case cannot be litigated at the common law and named and-technical rules applicable to the common law practice applied. It is assumed that if the relation of principal and agent existed the action could not be maintained, but no authorities are cited in support of it. I may be in error, but even at common law I can see no reason nor find any authority that an action of deceit may not be maintained against an agent, if warranted by the facts. But I can find nothing in the evidence establishing the fact of the agency in the loan to Miller. It is true that he acted as her agent in the collection of her money, that he was also custodian of it, but that was a separate and distinct transaction from the loaning. Defendant applied for the loan for Miller, and in order to secure it made the representations above discussed. Plaintiff consented to loan the money on certain designated conditions, with which he agreed to comply, and being the custodian and a supposed friend of the plaintiff, she relied upon him. In his zeal to secure the money for Miller, he made false representations, deceived the plaintiff, disregarded his instructions, and violated his agreement to secure the loan by deed of trust upon real property. If the evidence establishes any relation of principal and agent, it would seem that defendant was the agent of Miller.
3. It is contended that the plaintiff, with full knowledge *233 that the required security had not been obtained, adopted and ratified the transaction by collecting money from Miller. When a transaction is consummated by fraud and deceit, the law is that the injured part}1- may rescind, or bring a suit for damages. In order to rescind, parties must be placed in statu quo, which in this case could only have been done by delivering the note to Miller and getting the money lent, which could not be done. The acts relied upon as ratification were attempts to get the money and receiving what she could get. This cannot- be regarded as an adoption or ratification of the act of the defendant. It was, apparently, all she could do. She could not compel the giving of the agreed security, as Miller had no such property. Defendant cannot be allowed to complain that the plaintiff did all she could to get the money from Miller, which was clearly for his benefit. Nor did such course toward Miller relieve the defendant of his liability or ratify his unwarranted acts. The only effect would be to reduce the amount for which he was responsible.
4. The first eleven assignments of error are to the admission and rejection of evidence. We cannot take them up seriatim, and after careful examination are satisfied that none of the rulings were seriously prejudicial to the defendant, and were mostly, if not entirely, incidental, and having no important bearing upon the issues.
5. Counsel for defendant asked ten instructions, which were refused, and error assigned upon the refusal of each. The action of the court must be sustained. One required the court to charge that the relation of principal and agent existed between plaintiff and defendant, and that by reason of such relation the action could not be maintained. This differs from our view of the facts and the law as stated above. Another is in regard to ratification, as urged in argument, and was, in our view of the case, properly refused. One, in regard to the necessity of a preponderance of the evidence of the plaintiff, the weight, credibility, etc., was substantially embraced in the charge of the court. The remainder are all predicated upon what we regard, as shown *234 above, a mistaken view of the law and the facts, viz. that the representations were general and matter of opinion, for which the defendant could not be held, and that proof must have been made by the plaintiff, not only of their falsity, but the knowledge of the defendant that they were false, — a contention that, as stated above, we cannot adopt.
The charge of the court is severely and ably criticised at considerable length in the argument of counsel, but mostly upon the lines above indicated, as not being in harmony with the views of counsel as to the law of the case upon the questions presented, and not embracing the assertion that a knowledge of the falsity of the representations by the defendant and proof of it were necessary ; also in not charging the jury in regard to the relation of principal and agent supposed by counsel to have existed. Taken as a whole, we think the charge fairly presented the law as to the liability of the defendant, and the submission to the jury of the seven questions for special findings of fact aided the jury in the application of the law as given.
The judgment of the district court will be affirmed.

Affirmed.