[S. F. No. 4319.   Department Two.—December 6, 1907.]

PACIFIC VINEGAR AND PICKLE WORKS, Respondent, v. ELIZABETH E. SMITH, as Executrix, etc., of SIDNEY M. SMITH, Deceased, Appellant.

PRINCIPAL AND AGENT—RATIFICATION OF UNAUTHORIZED ACT—RECEIPT OF BENEFITS—RIGHT OF PRINCIPAL TO RESCIND.—It is a general rule that the ratification of an unauthorized act of an agent is an acceptance by the principal of the responsibilities of the act and the substitution of himself for the agent. This rule is generally applied for the protection of innocent third persons who have dealt with the agent upon the strength of his apparent or ostensible authority. The same rule is applied to relieve the agent where the principal could have disaffirmed or rescinded as against the innocent third party and has failed to do so, and is limited, so far as the agent is concerned, to those cases where there remains with the principal after his first complete knowledge of the transaction the power to rescind and he has failed to do so.

ID.—CORPORATION—PRESIDENT'S LIABILITY FOR UNAUTHORIZED SALES—BANKRUPTCY OF PURCHASER — RECEIPT OF PART PAYMENT FROM PURCHASER.—The president of a corporation, having ostensible authority to sell the goods of the corporation on credit, but actual authority to make such sales for a limited amount only, who, against the express instruction of his board of directors, makes sales on credit in excess of the amount limited and receives the notes of the purchaser in payment, is liable in damages to the corporation for the loss sustained by it on the notes so taken, and the corporation does not ratify the acts of the president so as to relieve him from liability by presenting the notes and receiving from the bankrupt estates of the maker and indorser part payment of the amount due thereon. Under such circumstances the sales could not have been rescinded by the corporation, and in failing to attempt to rescind it did not ratify the president's acts, and it was not only the right but the duty of the corporation to realize as much as it could on the notes, not to the end that the president should be relieved from responsibility for the difference, but to the end that by using every endeavor to realize upon the notes the agent's liability by way of damages could be accurately estimated in terms of that difference.

ID.—BOOKS OF CORPORATION—KNOWLEDGE IMPUTED FROM.—While as a general rule the officers and particularly the directors of a corporation are chargeable with knowledge of the facts which its books of account and records disclose, it is never applicable where the matter complained of is one between the corporation itself and any of its officers or agents.

PRACTICE—MOTION FOR NONSUIT AS TO ONE CAUSE OF ACTION.—Where the complaint states several causes of action and a motion for nonsuit is made directed " to all the causes of action mentioned in the complaint," the failure to grant the motion as to a cause of action in respect to which there was a failure of evidence is not error, unless as to all the causes of action there was a failure of evidence; and the failure to grant the motion as to such cause of action is without prejudice if the court charged the jury to find for the defendant thereon.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Carter P. Pomeroy, for Appellant.

Campbell, Metson & Campbell, and Thomas H. Breeze, for Respondent.

HENSHAW, J.,—Sidney M. Smith in his lifetime was the president of the plaintiff corporation. This action was brought against his estate to recover as damages the balance remaining due on certain promissory notes executed by the California Packing Company to plaintiff corporation, which were accepted and received by Sidney M. Smith as president of the corporation without authority so to do and against the express instructions of plaintiff's board of directors. Trial was had before a jury, whose verdict passed for plaintiff. From the judgment which followed and from the order denying the motion for a new trial defendant appeals.

Upon the appeal she first contends that the acts of Smith were ratified by plaintiff corporation. This ratification, it is argued, was established by the acts of plaintiff.

The notes made by the California Packing Company were indorsed by A. B. Patrick and presented nominally to plaintiff corporation, but in fact to its president Smith, by whom there was placed upon the notes the indorsement of the plaintiff corporation, after which some of these notes were discounted in the banks, some by the president himself, while others remained the property of the plaintiff corporation. Subsequently the California Packing Company and its accommodation indorser A. B. Patrick, both became insolvent. In the bankruptcy proceedings which followed, the plaintiff corporation participated by presenting these notes and received from the bankrupts' estates part payment of the amount due thereon. It is urged that these acts amounted to a ratification and relieved Mr. Smith and his estate from all liability to the Pacific Vinegar and Pickle Works. For the correct determination of this proposition, other facts than these thus stated are necessary for consideration. Some of those facts will be found set forth in *Pacific Vinegar and Pickle Works* v. *Smith,* 145 Cal. 352, [104 Am. St. Rep. 42, 78 Pac. 550]. Others are as follows: The California Packing Company under an agreement to purchase certain of its supplies from plaintiff corporation, promised to make its settlements on the first collection day of each month for all goods purchased for the calendar month preceding. Afterward Mr. Smith, as president of the corporation, requested of his board of directors that he be allowed to extend credit to the Packing Company, stating that the latter company could secure the

indorsement of A. B. Patrick to its notes, it being understood that A. B. Patrick was financially responsible. The directors authorized Mr. Smith to extend credit to the company not exceeding fifteen thousand dollars. Under this agreement the sales continued to the Packing Company, and in turn its promissory notes bearing seven per cent interest per annum were taken. These notes were discounted by the plaintiff corporation from time to time as money was required. The notes were three months' notes. At first they were paid promptly at maturity, but within a short time the Packing Company became financially embarrassed. Mr. Cote, its manager, explained the situation to plaintiff's president, and an arrangement was entered into between them whereby when a note of the Packing Company became due Mr. Smith gave to Mr. Cote the check of the plaintiff corporation to pay the note, and in return took the defendant Packing Company's note—in effect a renewal note for the same amount. Not only did Mr. Smith thus use the money of the plaintiff corporation, but he charged the Packing Company a brokerage commission of one per cent for so doing, and in some instances took a bonus in addition thereto. These transactions were concealed from the directors of the plaintiff corporation, to whom at their meetings Mr. Smith represented that the obligations of the Packing Company were being promptly met and that the outstanding notes to the plaintiff, which notes it either held or had discounted, amounted to about the sum for which he was authorized to extend credit. When, however, the failure of the Packing Company came, plaintiff was first apprised that there were of the Packing Company notes held by it or indorsed in its name by its president, Smith, and discounted, either to Smith himself or to the Bank of British Columbia, an aggregate of sixty thousand dollars, about twenty-three thousand dollars of which was held by the bank and about twenty-one thousand dollars by Smith himself. The cases of *Pacific Vinegar and Pickle Works* v. *Smith,* and *Smith* v. *Pacific Vinegar and Pickle Works,* 145 Cal. 352, [104 Am. St. Rep. 42, 78 Pac. 550], were cross-actions wherein Smith sought to recover upon the Packing Company's notes which had been indorsed by him in the name of the plaintiff corporation and without its knowledge and which were by him held. The determination of that litigation was against Smith's conten-

tion, and the facts there brought forth were held not to constitute a ratification. Nor in this case can it be successfully contended that the acts of the plaintiff amounted to a ratification which would exculpate its agent. The general rule undoubtedly is that the ratification of an unauthorized act of an agent is an acceptance by the principal of the responsibilities of the act and the substitution of himself for the agent. In general, the rule is applied for the protection of innocent third persons, those who have dealt with the agent upon the strength of his apparent or ostensible authority. As to such persons such a rule is essential for the preservation of their rights, and it is therefore enforced to the fullest extent. It is declared to be the duty of the principal to act immediately after knowledge, and his passivity or silence will be construed into an acquiescence or ratification so as to protect the innocent third party. In general, also, the same rule is applied, to relieve the agent where the principal could have disaffirmed or rescinded as against the innocent third party and has failed to do so, and this upon the very logical theory that having accepted the contract as to the third party with knowledge of its terms, and with ability to rescind he has thus affirmed the act of his agent. But upon a moment's reflection it will become apparent that the reason for applying the rule in all its liberality to innocent third persons does not exist in the same broad and benignant sense to the unwarranted and perhaps unlawful act of the agent. Thus, in many instances, the transaction is one which the principal could not rescind, because of the ostensible power of his agent. The innocent third party is thus fully protected. But can it with reason or justice be said that because the principal is thus compelled to accept the consideration from the innocent third party, the agent himself must of necessity be held harmless for his violation of duty and breach of trust? If an agent with ostensible authority to sell his principal's wheat, but under instructions to sell it for not less than a dollar a bushel, shall sell and deliver it for fifty cents a bushel, there is no power in the principal to rescind the sale. Shall the principal by accepting the fifty cents be held to have exonerated his agent from liability for the other fifty cents per bushel? Such a doctrine certainly does not commend itself and is not sustained. It is limited, so far as the agent is

concerned, to those cases where there remains with the principal, after his first complete knowledge of the transaction, the power to rescind, and failing so to do he is properly charged with full acceptance of all the responsibilities of the contract, even to the exoneration of his agent, because, with the ability to rescind, if he had rescinded, the transaction would be at an end and nobody would be injured. But in a case such as the one here presented it cannot successfully be contended that the acts of the plaintiff in endeavoring to realize upon the notes of the insolvent corporation, taken and indorsed by Smith in violation of his instructions, could amount, as to him, to an exonerating ratification. As to the Packing Company undoubtedly it was a ratification, but as to the Packing Company, the plaintiff corporation could do nothing else. Mr. Smith had apparent and ostensible authority to make sales in the manner in which he did. The sales as to the Packing Company were valid sales. The plaintiff, as to the Packing Company, could not have rescinded, and in failing to attempt to rescind it cannot be held to have ratified its agent's acts. The sale being complete as between the Vinegar Works and the Packing Company, it was not only the right but it was the duty of the plaintiff to realize as much as it could upon the notes thus improperly taken by its president, not to the end that he should be relieved from responsibility for the differences, but to the very end that by using every endeavor to realize upon the notes, the agent's liability by way of damage could be accurately estimated in terms of that difference. (*Triggs* v. *Jones,* 46 Minn. 277, [48 Pac. 1113] ; *St. Mary's Bank* v. *Calder,* 3 Strobb (S. C.) 403; *White* v. *Sanders,* 32 Me. 188; *Goodale* v. *Middaugh,* 8 Colo. App. 223, [46 Pac. 11] ; *Williams* v. *Moore,* 24 Tex. Civ. App. 402, [58 S. W. 953] ; *Continental Ins. Co.* v. *Clark,* 126 Iowa 274, [100 N. W. 524].)

It is urged that the court erred in refusing to grant a nonsuit as to the twelfth cause of action, plaintiff's liability upon each of these notes being charged in a separate cause of action, and the twelfth dealing with the sum of $165.20 alleged to have been paid out of the funds of the plaintiff to the defendant's testator without consideration. On the trial the plaintiff offered in evidence a check drawn by the plaintiff corporation to the order of its president, Sidney M. Smith, and

indorsed by him. There was no evidence offered by the plaintiff showing the purpose for which the check was given to Mr. Smith and a failure of proof to show that it was given without consideration or without authority. But the motion was directed "to all the causes of action mentioned in the complaint" and was not tenable unless, as to all, there was a failure of evidence. Moreover, no injury could have resulted to appellant since, by its instructions, the court charged the jury to find for the defendant as to this particular cause of action. The court was justified in refusing to give defendant's requested instructions number one and two. The instructions were based on the proposition that no limit was fixed by the directors as to the amount of credit which its president Smith could extend to the Packing Company. There was evidence showing that the board of directors placed a credit limit of "$15,000 or thereabouts," and that the real authority of the president, Mr. Smith, was limited to the extension of that amount of credit.

Instruction number three, requested by the defendant and refused by the court, was to the effect that, though the plaintiff might have originally limited the amount of credit to a particular amount, nevertheless if after imposing such limit it intentionally, or by want of ordinary care, allowed Mr. Smith to believe that he was authorized to extend such credit to an amount beyond the limit so imposed, and to the extent that he did impose it, this fact, if established, was a defense to the action. In support of this proposed instruction it is contended that the books of account of the plaintiff corporation had been introduced in evidence, and that as these books of account would have shown to the directors the true state of facts, negligence or an intentional acquiescence is imputable to them in having allowed the credit to exceed the designated amount. In this, appellant contends for the rule that the officers, and particularly the directors of a corporation, are chargeable with knowledge of the facts which its books of account and record disclose. This is unquestionably the rule, a rule, as is said by Mr. Justice Brewer in *First National Bank of Fort Scott* v. *Drake*, 29 Kan. 311, [44 Am. Rep. 646], which is "founded in public policy, essential to the safety of third parties in their dealings with the bank, and to the protection of the stockholders interested in its welfare

and safe management. So far as is necessary to accomplish these results, it should be carefully and strictly upheld; but it should not be carried beyond this, or to such an extent as to work injury to the bank." The rule itself and the limitation of its application cannot be more aptly stated than in the language just quoted. It is designed to protect, and limited to the protection of, third parties and of stockholders, whose trustees and agents the directors are. But when it is sought to apply the rule against the corporation on behalf of a president found faithless to his trust, the effort is without support in reason or authority. It would permit an officer of a corporation to enforce his own wrong against the corporation itself. Thus, while this rule of imputable knowledge of the contents of the books of a corporation is presumed for the protection of third persons and stockholders, it is not only never recognized, but distinctly disaffirmed, where the matter complained of is one between the corporation itself and any of its officers or agents. To apply it, would be to put a premium on dishonest bookkeeping, and, as pointed out by Mr. Justice Brewer, in the case of a bank, to permit the bookkeeper and cashier to combine and plunder the bank of all its assets, unknown to any one, though every transaction should be entered in the books, and, after doing this, to receive immunity because of the knowledge imputed to the other officers. (See, also, *Scott* v. *De Peyster*, 1 Edw. Ch. (N. Y.) 513; *Wakeman* v. *Dalley*, 51 N. Y. 27, [10 Am. Rep. 551]; *Wallace* v. *Lincoln Savings Bank*, 89 Tenn. 630, [24 Am. St. Rep. 625, 15 S. W. 448]; *Hallmark's Case*, 8 Ch. Div. 329.)

For these reasons the judgment and order appealed from are affirmed.

McFarland, J., and Lorigan, J., concurred.