## CITY NATIONAL BANK OF MANGUM v. CROW *et al.*

No. 558.     Opinion Filed September 13, 1910.

(111 Pac. 210.)

**BANKS AND BANKING—National Banks—Excessive Loans—Liability of Directors.** In an action by a national bank to recover damages sustained by it in consequence of excessive loans made by former directors, in violation of section 5239 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3515), the issues proper to be submitted to a jury are (1) whether the loans made were made at the time when the person to whom they were made was already indebted to the bank in a sum equal to one-tenth of the capital actually paid in; (2) whether such loans were knowingly made or assented to by such directors; and (3) what portions of the moneys so loaned were lost.

(Syllabus by the Court.)

*Error from District Court, Greer County; G. A. Brown, Judge.*

Action by the City National Bank of Mangum against Charles Crow and C. W. Gilliland. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*T. P. Clay, J. L. Carpenter* and *Charles M. Thacker,* for plaintiff in error.—Citing: *Witters v. Sowles,* 31 Fed. 1; *Cockrill v. Cooper,* 86 Fed. 7, 29 C. C. A. 529; *Stephens v. Overstoltz,* 43 Fed. 465; *Cooper v. Hill,* 94 Fed. 582; *Boyd v. Schneider,* 124 Fed. 239; *Nat. Bank v. Wade,* 84 Fed. 10; *Brown v. Bank,* 88 Tex. 265; *Zinn v. Baxter,* 65 Ohio St. 341, 11 Enc. Pl. & Pr. 162, 168, 664.

*T. M. Robinson* and *J. A. Powers,* for defendants in error.

KANE, J. This was an action commenced by the plaintiff in error, plaintiff below, against the defendants in error, defendants below, the former president and cashier, respectively, of said bank, to recover losses alleged to have been sustained by reason of excessive loans made to one J. A. Calhoun, an alleged insolvent person, in violation of sections 5200, 5239, Rev. St. U. S. (U. S. Comp. St. 1901, pp. 3494, 3515). The petition stated the facts in relation to the losses, in substance, as follows: That plaintiff's capital stock was and is $25,000; that its unimpaired surplus fund never exceeded $5,000; that defendants, without adequate security and solely upon the security of certain baled cotton, made numerous loans of plaintiff's money to J. A. Calhoun, an insolvent person, upon an open account and at an orally agreed rate of interest of 12 per cent. per annum on daily balances, commencing with a loan on October 5, 1905, and ending with a loan on December 23, 1905; that after the first loans in the early part of October, 1905, the daily balance, exclusive of interest, far exceeded one-tenth of both the said capital stock and surplus fund; that the said security was duly sold and the proceeds properly appled as credits upon the said indebtedness; that when, on January 9, 1906, defendants severed their connection and retired from plaintiff bank, the said indebtedness of the said Calhoun to plaintiff exceeded $26,939.34, including interest, which indebtedness was, on January 11, 1906, reduced by a credit of $18,019.75, derived from a prior sale of said security, and on February 16, 1906, by another credit of $6,857.40, derived from a sale exhausting the remnant of said security; that, after properly exhausting said

security and making all proper credits on said account, the said indebtedness of said Calhoun on said account was and is $3,054.77, with interest thereon from said date, February 16, 1906, at 12 per cent. per annum until paid; that said defendants, without the knowledge and without the consent of plaintiff's board of directors, and each member thereof, except E. J. DeArman, who protested against said loans, wrongfully made said loans, the same being in no part for discount of bills of exchange drawn in good faith against actually existing values nor the discount of commercial or business paper, but in violation of section 5200 of the Revised Statutes of the United States as amended (Act June 22, 1906, c. 3516, 34 Stat. 451 [U. S. Comp. St. Supp. 1909, p. 1331]), and section 5239 of said statutes. In a second cause of action it is further alleged that defendants, knowing said Calhoun to be insolvent at the time, in violation of their duty and trust as said officers of said bank, made the aforesaid loans to him.

The answer consisted of (1) a general denial, except as to such matters as are elsewhere in the answer specifically admitted; (2) that the loans to Calhoun were approved at a stockholders' meeting; that the defendants were released from liability and responsibility on that account, and that plaintiff was thereby estopped to·maintain its action; (3) that the 12 per cent. rate of interest charged was illegal, and that, deducting the same, the plaintiff has sustained no loss, and Calhoun is not indebteded in any amount; (4) that, when said defendants retired from the bank, the remnant of cotton held as security was worth more than enough to satisfy the Calhoun account, and that, if any loss occurred, it was due to the neglect of their successors to sell said cotton and apply the proceeds to the satisfaction of said account, knowing as they did the insolvent condition of the said Calhoun; that their successors in the conduct of the bank continued to pay for cotton purchased by the said Calhoun, and to charge the same to his account for a long period after defendants had ceased to be officers of said plaintiff bank or members of the board of directors thereof,

notwithstanding said bank and its officers-elect knew that said Calhoun was insolvent.

Thereafter the plaintiff filed its demurrer to the said answer. Thereafter the court sustained said demurrer to the third defense and overruled it as to the first, second and fourth grounds, whereupon the plaintiff filed its general denial. Upon the issues thus joined, the cause was tried to a jury, which returned a verdict for the defendants upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

The grounds of reversal relied upon by counsel for plaintiff in error arise out of the instructions, given and refused by the court, and evidence admitted and excluded over the objection and exception of plaintiff. We have examined the record with considerable care, and are convinced that unless the theory of counsel for plaintiff in error, as stated in their brief, is correct, there was no prejudicial error committed by the court below. It appears beyond controversy that the loans were in excess of the limit imposed by the federal statutes, the substance of which is set out in the petition of plaintiff as the basis of its action. Section 5239, *supra,* provides:

"And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."

Counsel for plaintiff in error contend that, the unlawful action of the defendants being the primary cause of the loss, it is immaterial what intervening contributory causes there may have been; that when defendants violated the legal limit placed upon loans for the protection of the association, its shareholders, and any other person in a position to suffer loss thereby, they became unconditional insurers that no loss should be sustained by the bank, its shareholders, its depositors, or any other person having any demand against the bank in consequence of such loans; that their liability for the consequences of their act in this regard could not be affected by any conceivable action of their successors nor of

their associates, the inchoate right of action against them being from the moment of the violation an asset of the bank which the policy of the national banking laws would not permit to be thrown away or impaired by these successors or associates; that the bank's officers could as well waive or estop the bank from demanding unpaid portions of its capital stock, or release a shareholder from other individual liability created by statute. One of the instructions complained of indicates the view of the court upon the law of the case. It reads as follows:

"If you believe and find from the evidence that J. A. Calhoun is insolvent, and that the officers of plaintiff bank acted in good faith, and as to them appeared to be necessary for the protection of the bank in the manner in which they held and finally disposed of said 82,595 pounds of cotton, then it will be your duty to calculate interest on $9,634.92 from January 11, 1906, to February 16, 1906, and add said principal and interest together, and deduct therefrom the net proceeds realized and received by plaintiff bank from the sale of said cotton, and find for plaintiff the balance remaining with interest thereon from said 16th day of February, 1906, to November 16, 1907, at the rate of 7 per cent. per annum, and interest on said sum from November 16, 1907, to this date at the rate of 6 per cent. per annum. But, to entitle plaintiff to recover from defendants the balance owing it by J. A. Calhoun, it must appear from the testimony that said Calhoun was, and is, insolvent, and that plaintiff's debt cannot be collected from him, and, unless you so find, you will return a verdict for defendants."

Thayer, Circuit Judge, discussing the question whether the directors of a national bank can be made to respond for losses occasioned by excessive loans under the provisions of sections 5200, 5239, Rev. St. U. S., in advance of a forfeiture of a bank's charter, in *Cockrill v. Cooper*, 86 Fed. 7, 29 C. C. A. 529, commented upon the status of the parties generally, as follows:

"The concluding paragraph of section 5239, which declares, in effect, that the directors of a national bank shall be personally liable for damages resulting from violations of the national bank act, provided they participate therein or assent thereto, is nothing more than a recognition of a liability which the directors of such institutions would incur at common law in the absence of the statute. The directors of a bank or other corporation are, and

always were, personally liable at common law for unauthorized acts, as well as for a failure to exercise proper care and diligence in the discharge of the duties of their office when such acts of misfeasance or nonfeasance are productive of damage to the corporation. *Hodges v. Screw Co.,* 1 R. I. 321, 53 Am. Dec. 624; *Spering's Appeal,* 71 Pa. 11, 10 Am. Rep. 684; *Hun v. Cary,* 82 N. Y. 65, 72, 73, 37 Am. Rep. 546; *Brinkerhoff v. Bostwick,* 88 N. Y. 52, 58; Mor. Priv. Corp. §§ 551, 556, and cases there cited. Section 5200 of the Revised Statutes, which prohibits loans to any one person, firm or corporation in excess of 10 per cent. of the capital stock of a national bank actually paid in, creates a fixed standard by which to determine, in many cases, whether loans which have been made to particular individuals or corporations are excessive, and for that reason indicative of negligence or bad faith, without remitting those questions to the decision of a jury or a chancellor, while section 5239 simply gives expression to a rule of the common law that directors who have knowingly assented to such excessive and unauthorized loans shall be personally liable for all damages which the corporation thereby sustains. If loans in excess of 10 per cent. of the capital stock are made, the statute obviates the necessity of determining whether they were excessive, and of making any inquiry into the motives or conduct of the directors, other than the inquiry whether the loans were knowingly made or assented to. The result is that the statute, considered as a whole, prescribes a standard of duty, such as might be prescribed by a by-law of the corporation, without creating a new cause of action, or altering the foundation upon which the personal liability of directors for wrongful or negligent acts ultimately rests or depends. * * * The directors of a bank, being agents of the corporation, are bound by the law of agency to act within the scope of the bank's charter and by-laws, and to exercise at all times a reasonable degree of care and diligence in the discharge of the duties which they have been appointed to perform. If they are guilty of a culpable violation of this obligation, and the corporation thereby sustains damages, the directors are personally liable therefor to the corporation while it is a going concern, and to its receiver when it has become insolvent; and this without reference to the fact that the franchises of the corporation have not been forfeited."

From the foregoing reasoning, which we think is sound, it follows that the effect of section 5239, *supra,* is to create a fixed

standard by which to determine whether loans which have been made to particular individuals or corporations are excessive, and for that reason indicative of negligence or bad faith.  In all other particulars cases of this class stand on the same footing as actions for negligence at common law against directors of a bank for failure to exercise proper care and diligence in the discharge of the duties of their office.

In the case at bar it is admitted that the defendants made a loan that was in excess of the statutory limit, and that a loss was suffered by the bank by the non-collection of the full amount of said loan.  But the defendants contend "the loss was occasioned by the intervening negligence of our successors in office in not exercising due care and diligence in the sale of the property taken to secure the loan, and not by our original negligent act in making the same."  We do not believe the rule contended for by counsel applies to the instant case.  It is true that, as a general rule, if one is guilty of a negligent act which would not have produced the loss or injury but for the subsequent intervening negligence of another, he will not be responsible for the resulting damages.  1 Thompson's Commentaries on the Law of Negligence, § 55.  This doctrine, however, is subject to the proviso, among others, that the circumstances were such that the injurious result which did happen might have been foreseen as likely to result from the first wrongful act or omission.  1 Thompson's Commentaries on the Law of Negligence, § 57.  The test of whether the act complained of was the remote or proximate cause of the injury is to be found in the probably injurious consequences which were to be anticipated; not in the number of subsequent events and agencies which might arise.  1 Thompson's Commentaries on the Law of Negligence, § 58.  The sections of the act of Congress under consideration "treat the directors of a national bank as persons charged with a duty and a trust for the benefit of other parties; and, that when they violate such trust, the statute in effect declares that they shall compensate the parties who have been injured for that violation of the trust."  *Stephens v. Overstolz*

(C. C.) 43 Fed. 465. Mr. Justice Miller, who delivered the opinion of the court, further discussing the same question, says:

"The statute says, in effect, that they shall be liable for whatever damages result to any one from their violation of duty. * * * Whoever is injured may sue, and the extent of the recovery depends upon the damage which the party suing has sustained. It does not fix any definite sum to be paid by the party for his wrongdoing. It simply says he must make good the damage he has inflicted upon others. * * * The officers of a bank are forbidden to do a certain thing because it may tend to the ruin of the bank. The statute says you shall not do that, and, if you do it, you shall be liable to all persons injured by your wrongful act. You shall be liable to the bank, you shall be liable to the stockholders, and you may be liable to the general creditors of the bank, or the depositors of the bank. The extent of that liability is not affected by the circumstances which mislead you, or by your criminal intention, but depends on the fact that the act was done knowingly, and was in violation of the law. The extent of the liability incurred is the amount of damages you have inflicted upon others. * * * Some point was made that the receiver has no right to sue, because the damage had not been sustained at the time of the director's death, or at the time of the appointment of a receiver of the bank. I confess I have had some difficulty in apprehending the force of that argument. All that I can make of the contention is that although the wrong had been done, and the money had been loaned, yet, because it was not found out until after the receiver was appointed that the wrong had occasioned a loss to somebody, that, therefore, there was no right of action. We cannot assent to that view. The injury was done by the director in his lifetime by the wrongful loan of the money in question, and the loss had really occurred before the receiver's appointment, although it was not known prior to that time, yet the men to whom the money was loaned were insolvent."

After the foregoing opinion was handed down, the petition was amended, and the case was again before the Circuit Court for the Eastern District of Missouri (*Stephens v. Overstolz* [C. C.] 43 Fed. 771). In delivering the opinion Thayer, J., said:

"'The suit before us is to recover whatever damages the Fifth National Bank may have sustained in consequence of excessive loans knowingly made or assented to by the defendant's testator

while serving in the capacity of director. The suit is by a receiver duly appointed, in whom are now vested all claims of the bank; and as whatever injury resulted from making the excessive loans in question was a damage primarily done to, and recoverable by, the bank, it is not apparent that any stockholder or creditor of the institution can maintain a suit against the executrix for the alleged excessive loans either during the pendency or after the termination of the present action. There is no necessity, therefore, to resort to equity to avoid a multiplicity of suits. Furthermore, the issues to be tried appear to be such as can be conveniently disposed of by a court of law. They are simply whether certain specified loans, made to four different parties, were made at a time when the several parties were already indebted to the bank in a sum equal to one-tenth of its capital actually paid in, and whether such loans were knowingly made or assented to by the testator, and what portion of the moneys so loaned were lost."

We are of the opinion that the foregoing statement correctly states all the issues that could properly be submitted to the jury in the case at bar. They are: (1) Whether the loans made to Calhoun were made at a time when he was already indebted to the bank in a sum equal to one-tenth of its capital actually paid in. (2) Whether such loans were knowingly made or assented to by the defendant. (3) What portion of the money so loaned was lost.

As the instruction complained of broadens the scope of inquiry beyond the limit prescribed by the foregoing authorities, the judgment of the court below must be reversed and the cause remanded, with directions to grant a new trial.

All the Justices concur.