## FERGUS FALLS WOOLEN MILLS COMPANY v. IVER J. BOYUM.[1]

May 11, 1917.

Nos. 20,225—(64).

**Corporation — powers of manager — liability for violation of by-laws.**

1. The manager of a corporation entrusted with the transaction of its business affairs is bound by the restrictions imposed upon the corporation by its charter and by-laws, and, if he transgresses such restrictions, is liable for the damages resulting to the corporation therefrom.

**Same — evidence.**

2. Defendant as manager of plaintiff corporation, having contracted debts in excess of the limit prescribed by the charter, in consequence whereof it became necessary to dispose of plaintiff's merchandise at an assignee's sale and at a loss, is liable in damages.

**Ultra vires acts — ratification by all stockholders.**

3. As the restriction violated was imposed upon the corporation itself by its charter, the *ultra vires* acts of defendant could not be ratified by the directors, but only by the unanimous action of the stockholders after full knowledge of the facts.

**Waiver by stockholders.**

4. The claims of the creditors appearing to be valid and enforceable, the recognition by the stockholders of liability to the creditors did not waive the right to hold defendant responsible for the damages resulting from his *ultra vires* acts in contracting such claims.

[1]Reported in 162 N. W. 516.

**Measure of damages — charge to jury.**

> 5. The court instructed the jury in effect, that if they found that the existence of the excess indebtedness made an immediate or forced sale of plaintiff's merchandise necessary and was the sole cause of such necessity, they should allow as damages the difference between the value of such merchandise for sale at an immediate or forced sale and its value for sale in the usual course of business, not exceeding the actual loss shown by the evidence. *Held* justified by the facts shown by the evidence.

Action in the district court for Otter .Tail county to recover $50,000. The facts are stated in the opinion. Defendant's demurrer to the complaint was overruled. The case was tried before Parsons, J., who, when plaintiff rested, denied defendant's motion to dismiss the action, and a jury which returned a verdict for $3,000. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*N. F. Field* and *James A. Brown,* for appellant.

*Barke & Barke* and *Hilton & Thompson,* for respondent.

TAYLOR, C.

Plaintiff is a corporation engaged in manufacturing woolen goods, and is authorized to sell its own products, and also to buy and sell other goods at wholesale or retail in the state of Minnesota and elsewhere. It had a paid-in capital stock of $131,400, and its articles of incorporation or charter provided that its indebtedness should never exceed one-half the amount of the capital stock actually paid in. Defendant was the principal stockholder and the president and general manager of the company, and took complete charge of its business affairs. The company did a profitable business for several years prior to 1913. In the spring of 1913, it had a considerable quantity of unsold products on hand, and to increase sales defendant, without consulting the board of directors, established retail stores at various places in the states of Minnesota and North Dakota, in which he placed the goods manufactured by the company and also other goods purchased from wholesalers and jobbers. In these transactions he incurred an indebtedness on behalf of the company which at one time amounted to some $200,000. In the fall of

1913, the company was unable to pay its debts then past due or to secure further extensions of time, and, at the demand of creditors and to escape threatened suits, conveyed its property to three trustees on December 23, 1913, in trust to be converted into money and applied in the payment of its indebtedness. At this time the indebtedness of the company was approximately $110,000, and the value of its assets was approximately $255,000. The trustees converted the goods on hand into cash, and, after paying all the debts and the expenses of the trust, returned the remainder of the property consisting of the manufacturing plant, the book accounts and $6,000 in cash, to the company. The value of the property so returned was approximately $60,000. On January 15, 1914, the stockholders held their annual meeting and elected a new board of directors. Shortly thereafter this suit was brought. At the trial the court eliminated all claims set forth in the complaint as grounds for recovery, except the claim that defendant was liable in damages for incurring debts on behalf of the company in excess of the limit fixed by its charter. Defendant admitted contracting the excessive indebtedness charged, but insisted that the contracting of such indebtedness had been acquiesced in and ratified by the directors and stockholders of the company. Plaintiff denied any ratification thereof. The jury returned a verdict of $3,000 for plaintiff, and defendant appealed from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

Although the charter and by-laws vested the management and control of the company in a board of seven directors, and gave the finance committee, of which the secretary was chairman, control over the manager and other officers, yet in fact defendant was permitted to manage and operate the business as he saw fit without interference by any one. He had transacted all the business of the company so long that we shall assume that he was authorized to transact any and all business and to incur any and all obligations which the company was authorized to transact or to incur. Nevertheless in exercising this plenary power, he was acting as the agent of the company, and was bound by the restrictions imposed by the charter and by-laws of the company. People v. Knapp, 206 N. Y. 373, 99 N. E. 841, Ann. Cas. 1914B, 243. If he disregarded these restrictions and imposed upon the company obligations

forbidden by its charter, he is liable for the damage, if any, resulting to the company therefrom. City Nat. Bank v. Crow, 27 Okla. 107, 111 Pac. 210, Ann. Cas. 1912B, 647, 21 Am. & Eng. Enc. (2d ed.) 878, par. (2). Conceding that he had authority to establish the several stores and to purchase goods therefor, he was nevertheless prohibited from incurring debts for that or any other purpose aggregating more than $65,700 at any one time. He incurred debts far exceeding this amount, and the present question is whether the contracting of such indebtedness has been ratified so as to absolve him from liability for damages resulting therefrom.

The restriction was placed upon the corporation itself, and necessarily limited the power of all its officers and agents. Consequently it was beyond the power of the officers and directors of the company to ratify the acts complained of. They could be ratified only by the unanimous action of all the stockholders after full knowledge of the facts. Kraniger v. People's Building Society, 60 Minn. 94, 61 N. W. 904. The burden of showing ratification was upon the defendant. While some of the stockholders knew that stores had been started and goods bought therefor, it does not appear that any of them, except the secretary and the defendant himself, knew, before the making of the assignment, that the indebtedness exceeded the prescribed limit. At the annual stockholders' meeting above mentioned, held about three weeks after the assignment, the stockholders instructed the directors to convert the goods in the several stores into money as soon as possible, and recommended that the directors submit a proposed compromise to the creditors. This was the extent of the action taken. Unless the indebtedness, or some part if it, was unenforceable against the company, and the stockholders had knowledge of that fact, their failure to contest or deny the liability of the company to its creditors cannot be construed as ratifying the *ultra vires* acts of defendant. The company had received the goods purchased and the loans made, and appropriated them to its own use, and no attempt was made to show that the creditors knew that the company had exceeded its debt limit when they extended credit. There is nothing to impugn the good faith of any creditor, and the record does not disclose a valid defense to any claim. 7 R. C. L. p. 591, § 582. Recognizing liability to the creditors under such circumstances did not

operate as a waiver of the right of action against defendant for wrong-
fully contracting such liability.   Pacific Vinegar & Pickle Works v.
Smith, 152 Cal. 507, 93 Pac. 85.   It is not claimed that all the stockhold-
ers were present or represented at the stockholders' meeting, but, even
if they were, the action taken fell far short of ratifying the *ultra vires*
acts of defendant as a matter of law.   The most that can be claimed
is that the evidence, taken as a whole, made the question of ratification
a question for the jury.   This question was properly submitted to the
jury and the evidence justifies their verdict.

It is further insisted that the court adopted an erroneous rule for
the measure of damages.   The court instructed the jury as follows:

"The mere fact that there was such unauthorized increase of indebted-
ness is not, however, sufficient to make defendant responsible for any
losses which befell the corporation, but, if the creation of such indebted-
ness should be determined by the jury as the direct and natural cause
of the stringency in the affairs of the corporation, which it is conceded
existed on December 23, 1913, and that such a condition would not have
existed had it not been for such increased indebtedness, and if the jury
further find it to be a fact that the corporation was at that time pressed
for money with which to meet its obligations, and on account of such
excess indebtedness and such pressure was under the reasonable neces-
sity of disposing of its assets immediately, without waiting to do so in
the usual course of business, and that by reason of these facts the value
of the plaintiff's assets at that time before it made this trust deed for
the benefit of creditors was diminished, defendant would then be liable
to the company—the plaintiff—unless his acts were afterwards ratified
by the company, for such loss, which would be the difference in the value
of such assets at the time—December 23, 1913—before the making of
the trust deed as such value would have been had not this necessity of
an immediate sale of its assets existed, and their actual value as affected
by such necessity, except that such damages could not in any event ex-
ceed the actual loss to the company as determined by subtracting what
was afterwards realized by the trustees out of the assets from the value
of the assets as it would have been had not such value been affected by
the necessity of an early or forced sale.

"If, however, the jury should determine that the increase of the company's indebtedness was not the cause of the condition which existed in the company's affairs on December 23rd, or that no reasonable necessity then existed for forcing the sale of the assets either because the difficulties and embarrassments of the company might have been otherwise met, or for any other reason, or if the same situation would have existed had the defendant increased the company's indebtedness only to the extent allowed by the charter—$65,700,—or if the value of the assets was not diminished by this situation, in any one of these events the defendant would not be responsible for the company's losses and you would in any such case return a verdict for the defendant."

- This instruction confined the amount recoverable to the difference between the value of the goods for sale at an immediate or forced sale, and their value for sale in the usual course of business, not exceeding the actual loss to the company, and permitted the recovery of this amount only in case the jury found that the existence of the excess indebtedness made the immediate sale of the goods necessary, and that such necessity would not have existed but for such excess indebtedness. We think the instruction did not violate the rule that the damages are limited to compensation for the actual loss sustained as a direct and probable consequence of the *ultra vires* acts. Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L.R.A. 751, 85 Am. St. 667; Drucklieb v. Harris, 84 Misc. 291, 147 N. Y. Supp. 298.

Defendant also attacks the rulings, admitting evidence tending to show the difference between the value of the goods for sale at a forced sale and their value for sale by a going concern in the usual course of business, but we find no reversible error therein.

Order affirmed.