**COURTNEY v. CUSTER COUNTY BANK et al.**

No. 13085.

United States Court of Appeals Ninth Circuit.

Sept. 10, 1952.

R. Don Bistline, Pocatello, Idaho, for appellant.

O. R. Baum, Ruby Y. Brown, Pocatello, Idaho, for appellees.

Before STEPHENS, ORR and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Federal jurisdiction in this case is based solely on diversity of citizenship. The plaintiff-appellant, Howard M. Courtney, a resident of California, instituted an action against the defendants-appellees, the Custer County Bank (hereafter called "Bank") and Oliver T. Davis, the cashier of the Bank, both residents of Idaho, in the United States District Court for the District of Idaho. Courtney complained that the defendants defrauded him of $10,000; and he brought suit to recover that amount plus punitive damages. The trial court directed a verdict for the defendants at the close of the presentation of the plaintiff's case. Plaintiff appeals from that judgment.

On November 27, 1946, the Fourth of July Mining Company (hereafter called "Mining Company") executed and delivered to the Bank a chattel mortgage on personal property to secure a loan in the amount of $7,500. Subsequently the Bank learned that certain property listed in the above described chattel mortgage did not belong to the mortgagor, i. e., the Mining Company. Thereupon, the Bank demanded immediate full payment on its loan. To raise the needed money the Mining Company entered into negotiations with Courtney. Courtney agreed to lend the Mining Company $10,000 on a note to be secured by a chattel mortgage on the identical property listed in the mortgage held by the Bank, plus certain additional property which had been mortgaged to one Roy E. Bassett.

Courtney and the Mining Company officers met with Davis, the cashier of the Bank, in the offices of the defendant Bank on September 23, 1947. The Bank, through its agent Davis, agreed to draw up the note, the mortgage, and certain other papers for Courtney, and to act as escrow agent in the mortgage loan transaction between Courtney and the Mining Company. Courtney then deposited a draft for $10,000 in the Bank and drew a check in that amount to the order of the Mining Company. There is a conflict in the testimony as to whether Courtney delivered the check directly to an officer of the Mining Company, or whether the check was delivered to Davis

in escrow. Courtney contends that he delivered the check to Davis with instructions that it be transmitted to the Mining Company only after the Bank had listed on the mortgage all of the property which had been listed on the Bank's mortgage and had checked the record to ascertain whether or not the Mining Company owned such chattels free and clear. Davis denied receiving the check in escrow or any instructions regarding the listing on the mortgage of all the property which had been listed on the Bank's mortgage. He asserted, rather, that Courtney had only requested that in drawing up the mortgage he check to see that the property listed was clear of liens. In either event, the check for $10,000 was subsequently delivered to and endorsed by one of the officers of the Mining Company, and was deposited to the Mining Company's account in the Bank. And after the check was cleared, the Mining Company repaid the Bank its $7,500 loan.

While Davis, and thus the Bank, knew that certain of the property listed on the mortgage which the Bank had held did not belong to the Mining Company, such information was not disclosed to Courtney. The mortgage which Davis drew up for Courtney listed only the property to which the Mining Company had clear title; it did not list the property which the Mining Company did not own, nor the property which had previously been mortgaged to Bassett.

In March, 1948, the note became due, but the Mining Company was unable to pay it. Courtney agreed to extend the note for an additional eleven months in consideration for 4,000 shares of stock in the Mining Company. It was not until August, 1948, one year after the mortgage had been executed and several months after the extension on the note had been granted, that Courtney received from the Bank the Mining Company stock along with a copy of the mortgage. And it was then that Courtney learned of the omissions from the mortgage.

Courtney initiated this suit in February, 1950, eighteen months after he discovered that his mortgage did not cover what he thought it had. In his cause of action Courtney alleged that Davis fraudulently

omitted to disclose that the Mining Company did not own all of the property listed on the mortgage which the Bank held. He based the Bank's duty to disclose on a fiduciary relationship allegedly existing between Courtney, as the principal, and the Bank as his agent. Courtney also alleged that the Bank paid over the money to the Mining Company in violation of his instructions regarding the security which was to be included in the mortgage. By way of relief, Courtney asked for restitution of the $10,000 which he said he entrusted to the Bank. He also asked for attorney's fees and punitive damages for fraud.

In directing a verdict for the defendants, the district court explained that the plaintiff's acceptance of the stock as consideration for the extension of the note after he had learned of the unsatisfactory provisions of the mortgage indicated acceptance of the mortgage as a matter of law.[1] The court also ruled that there was no evidence that the plaintiff had exhausted his security; nor was there any evidence of fraud on the part of the Bank; nor was there any basis from which damages could be measured.

■ When a case is tried before a jury as this was, the court may direct a verdict for the defendant only after all the evidence has been considered in the light most favorable to the plaintiff and as a matter of law a verdict for the plaintiff could not be justified. Moore's Federal Practice (2nd ed.) Vol. 5, § 41.13[4]. For it is the jury's function to find the facts unless there are no controverted material issues of fact upon which reasonable men could differ. Moore, op. cit. § 50.02[1];

North Pennsylvania R. R. Co. v. Commercial Nat. Bank, 1887, 123 U.S. 727, 8 S.Ct. 266, 31 L.Ed. 287; Gunning v. Cooley, 1930, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. But where the evidence is conflicting or is insufficient to support but one certain verdict, a directed verdict is improper. Moore, op. cit., § 50.02[1]; Roche v. New Hampshire National Bank, 1951, 1 Cir., 192 F. 2d 203.

There is much conflicting testimony regarding the transactions between the parties to this case. However, on one point there is no dispute: Courtney did accept the 4,000 shares of stock in the Mining Company after he had learned of the omissions from the mortgage. Moreover, there is no evidence that he ever tendered the shares back to the Mining Company. The district court concluded from this undisputed fact that as a matter of law Courtney must also have accepted the mortgage and thus waived any right he might have had to rescind the transaction on the ground of fraud.

■ Since the remedies which are available to a victim of a fraud are inconsistent, it is necessary for the defrauded party to choose between them. One remedy which may be pursued is to repudiate the transaction. The defrauded party is thereby returned to his status quo ante, and he is entitled to recover any sum which he advanced under the fraud; but he may not sue for any damages. For the remedy of repudiation is based on the theory that because of the fraud no transaction occurred; and having received back all that he put forth, the "victim" has not been injured. Sylvania Industrial Corp. v. Lilienfeld's Estate, 1943, 4 Cir., 132 F.2d 887, 893, 145 A.L.R. 612.

1. Record on appeal, pages 117, 118: "* * * It seems to me that in this case there is an entire failure of proof that the plaintiff had been damaged. It also appears from the evidence that he received stock in the mining company as a consideration for an extension of the mortgage, and that was on or about the date that he was furnished a copy of the mortgage by the Bank. This act of his in accepting the stock would indicate that he accepted the mortgage,— there is no evidence that he returned the stock after he discovered the mortgage was not to his liking. There is no evidence at all but that he received something of value in the stock from the company. There is no evidence that he has exhausted his security, that is, the property that he had a mortgage on. There is no evidence in the court's judgment of any fraud on the part of the bank. If I were to present this to the jury and they had to discuss this evidence and try to arrive at a verdict I know of no way they could determine any amount of damage that the plaintiff has sustained. I feel that there is nothing for me to do but to grant the motion."

■ The alternative remedy which may be elected by the defrauded party is that he affirm the fraudulent transaction and maintain an action to recover damages for deceit. MacLeod v. Stelle, 1926, 43 Idaho 64, 249 P. 254, 256.

■ In the instant action, Courtney chose to repudiate the transaction and to sue for recovery of the money which he had advanced so that his status prior to the alleged fraud might be restored. However, Courtney's admitted conduct is inconsistent with repudiation. The mere fact that Courtney extended the due date on the note for which the mortgage was security at a time when he thought the mortgage was valid would not alone bar him from repudiating the mortgage upon his discovery of a fraud. But when Courtney accepted compensation for the extension of the due date even after he knew of the alleged fraud, and, furthermore, failed to tender the compensation back, the trial court could only conclude that he chose to affirm the transaction. Otherwise, Courtney would be in the position of claiming that there was no valid mortgage while at the same time he retained benefits for forbearing to foreclose that very "non-existent" mortgage.

Affirmed.

POPE, Circuit Judge (concurring).

I agree that the judgment here must be affirmed although I have a somewhat different view as to the reasons for the affirmance.

The facts disclose that Courtney, the appellant, received the shares of stock in the Mining Company at the same time that he received the copy of his mortgage from which he learned that certain property had been omitted from the mortgage. It is therefore clear, as the majority opinion suggests, that Courtney retained the shares of stock in the Mining Company after he learned of the omissions from the mortgage.

Now, upon the theory upon which Courtney prosecuted his appeal, this retention of the mining stock would bar his recovery, for that theory was that he was seeking the restitution of money which he had lost by reason of the fraud of the defendants.

At the time of the argument before us it was suggested that the appellant had mistaken his remedy,—that his remedy should have been an action by himself as principal against the Bank as his agent to recover under the rule which permits a principal to recover damages from his unfaithful agent.

If the action were viewed in that light, the retention of the stock by Courtney, while it might bar his chance for disaffirmance against the Mining Company, would not operate to release his agent from liability. Courtney would have a right to retain the stock in order to protect his own interest. He would have a right to realize what he could from the defective mortgage and hold the unfaithful agent on account of any loss established. See Restatement of Agency, § 416(a), and Pacific Vinegar & Pickle Works v. Smith, 152 Cal. 507, 93 P. 85; cf. Tiffany, Agency (1924), § 64, pp. 170–171.

I am of the opinion that there was a complete failure to prove damages under the only theory which was available to Courtney. He claims that the property which was included in his mortgage was worthless and that the property which was omitted would have been adequate to secure him. No competent proof of this worthlessness or of the claimed values was offered. I think therefore that the judgment must be affirmed.