## E. P. GILSON, RECEIVER,

v.

## DELAWARE & HUDSON CANAL CO.

GENERAL TERM, 1892.

*Proximate and remote cause. Diversion of water-course. Contributory negligence.*

1.  The question of proximate and remote cause considered.

2.  Defendant constructed its railroad in such a manner as to divert a water-course from its accustomed channel into an abandoned quarry of V. From this quarry the water burst through the dividing wall into the quarry of the plaintiff. It appeared that the ancestors of the plaintiff had worked over onto the premises of V before the construction of the defendant's railroad, and that this encroachment had so weakened the dividing wall that the water broke through, doing the damage complained of by the plaintiff. *Held,* that the weakening of the wall was not the proximate cause of the injury.

3.  Also that the plaintiff was not guilty of contributory negligence, for he had omitted no duty which he owed the defendant.

4.  When the defendant unlawfully turned the water-course towards the plaintiff's quarry, it was its duty to see that no damage was thereby done.

Case for the diversion of a water-course by the defendant, whereby the plaintiff's quarry became flooded. Plea, the general issue. Trial by jury at the September term, 1891, Rutland county, THOMPSON, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts.

The plaintiff brought suit as the receiver of the Dorset

Marble Company.   His evidence tended to prove that the defendant had, by the construction of its railroad embankment, diverted an ancient water-course from its accustomed channel into his quarry, and had also collected and discharged surface water into said quarry.   The railroad of the defendant at the point complained of was constructed in 1884 along a steep hillside.   At one point there had been for many years a water-course which drained at certain seasons of the year a considerable territory, but which during a considerable portion of the year was entirely dry.   From the point where this water-course crossed the line of the defendant's railroad, the land gradually descended towards the quarry of the plaintiff.   In constructing its railroad the defendant made no provision for the passage of the water running in this water-course underneath its track, and the complaint of the plaintiff was that the defendant had thereby diverted this water-course, and discharged it, together with the surface water which was collected by this embankment, into his quarry.

The land at the point where the water-course crossed the line of the defendant's railroad belonged to the Vermont Marble Company, as did the land between that point and the plaintiff's quarry.   Upon this land of the Vermont Marble Company, and in close proximity to the plaintiff's quarry, were two abandoned quarries owned by said Vermont Marble Company, and these abandoned quarries were partially filled with water at all times.   The effect of the defendant's embankment as constructed was to deflect whatever water ran in the water-course and whatever surface water ran down the side hill, and to conduct it along the side and into the first of these abandoned quarries.   When this quarry became filled with water the water would overflow into the second abandoned quarry, which lay adjacent to the quarry of the plaintiff.   This quarry was separated from the plaintiff's quarry by what appeared to be a solid

wall of rock, and this dividing wall rose to such a height upon the surface that the water would flow over the track of the defendant before passing into the quarry of the plaintiff. From the depression around the first abandoned quarry a culvert was constructed underneath the defendant's track. The claim of the defendant was that this culvert was sufficient to carry off the water which was conducted as above described into the first abandoned quarry, and there was no question but what it had proved sufficient from 1884, when the embankment was constructed, down to the time of the injury.

In January, 1888, occurred a freshet which the witnesses described as the most serious ever known in that locality. In the course of this freshet large quantities of water ran down the hillside, were turned by the defendant's embankment, and discharged into the first abandoned quarry. This quarry was filled up by the unusual flood of water, and thereupon the water overflowed into the second abandoned quarry, rising in that quarry to a point considerably above that at which it ordinarily stood. From this quarry it burst through the dividing wall which separated it from the plaintiff's quarry, whereby the damage complained of was done.

The evidence of the defendant tended to show that the ancestors of the plaintiff, at some time previous to the construction of the defendant's railroad, had, in the excavation of the plaintiff's quarry, encroached some eight or ten feet upon the lands of the Vermont Marble Company, and thereby so weakened the dividing wall that it had burst through under the pressure of the water. The defendant claimed that if the ancestors of the plaintiff had trespassed upon the lands of the Vermont Marble Company, and in so doing so weakened the dividing wall as to occasion the injury in question, the plaintiff could not recover, and requested the court to so instruct the jury. This the court declined to do, and instructed the jury that in determining

the issue involved it was immaterial whether the plaintiff's ancestors had or had not worked over onto the land of the Vermont Marble Company, and that if they had it would be no defence to this action, to which the defendant excepted.

*C. A. Prouty* for defendant.

A plaintiff guilty of contributory neglect cannot recover, and a trespass upon the lands of a third person may constitute such neglect. *Trow* v. *Central Vt. R. R. Co.*, 24 Vt. 487; *Jackson* v. *R. & B. R. R. Co.*, 25 Vt. 150; *Bemis* v. *Conn. & Pass. Rivers R. R. Co.*, 42 Vt. 375.

The encroachment of the plaintiff's quarry was not obvious to the defendant, therefore it was under no obligation to guard against it; and but for this encroachment the injury could not have occurred. Shear. & Red. Neg., § 99, p. 163.

*F. G. Swinington* for the plaintiff.

The plaintiff's ancestors were not bound to anticipate the building of the defendant's railroad.

The opinion of the court was delivered by

ROWELL, J.   It is a maxim of the law that the immediate, not the remote, cause of an event is regarded. In the application of this maxim the law rejects, as not constituting ground for an action, damage not flowing proximately from the act complained of. In other words, the law always refers the damage to the proximate, not to the remote, cause.

It is laid down in many cases and by leading text-writers, that in order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable sequence of the negligence or the wrongful act,

and  that it was such as might, or ought to, have  been  fore-
seen in the light of  the  attending  circumstances.    But this
rule is no test in cases where  no intervening  efficient  cause
is found between the original wrongful act and the injurious
consequences complained of, and  in which  such  conse-
quences, although  not  probable, have  actually  flowed  in
unbroken  sequence  from  the  original wrongful act.    This
is well  illustrated by *Stevens* v. *Dudley*, 56 Vt. 158, which
was  this :    Defendant  was  a  marshal  at  a  fair, and  in
clearing the track for a race he turned off  a man's  team  so
negligently that the  man was  thrown  from  his wagon, his
horse broke loose  and  ran against plaintiff's wagon and in-
jured him.    The  court  below charged  that  defendant was
not liable unless he might  reasonably have  expected  plain-
tiff's injury to result from his act.    Held error, and that the
court should have charged that if the defendant negligently
turned  the  team  off the  track, and  thereby the  team was
deprived of  the control of  a  driver  and  became  frightened
and ran over plaintiff's team and caused the injury, without
any superior, uncontrollable force, or without the negligence
of  a responsible  agent  having  intervened,  the  defendant
would be  liable, although  he did  not  anticipate, and might
not have anticipated, such consequences from  his  negligent
act.    In  other words, that  the  court should  have  charged
that  if defendant's act was  negligent, and  in the  natural
order of  cause and effect the plaintiff  was  injured thereby,
the  defendant was  liable.    *Smith* v. *The London & South-
western Railway Co.*, L. R. 6, C. P. 14, in the  Exchequer
Chamber,  is  to  the  same  effect.    There  the  company's
workmen, after cutting  the  grass and  trimming  the hedges
bordering the railway, placed the  trimmings  in  heaps  be-
tween the hedge and the line, and  allowed  them  to  remain
there for several  days  during very dry weather, which had
continued for some weeks.    A fire  broke  out  between  the
hedge and the rails and burnt  some  of  the  heaps  of  trim-

mings and the hedge, and spread to a stubble field beyond, and was thence carried by a high wind across the stubble field and over a road, and burnt plaintiff's cottage two hundred yards away from where the fire began. There was evidence that an engine had passed the spot shortly before the fire was first seen, but no evidence that it had emitted sparks, nor any further evidence that the fire originated from the engine, nor was there any evidence that the fire began in the heaps of trimmings and not on the parched ground around them. The court below held that the plaintiff could not recover, because no reasonable man would have foreseen that the fire would consume the hedge and pass across a stubble field, and so get to plaintiff's cottage at a distance of two hundred yards from the railway, crossing a road in its passage. In the Exchequer Chamber, Chief Baron Kelley said that he felt pressed at first by this view, because he then and still thought that any reasonable man might well have failed to anticipate such a concurrence of circumstances as the case presented; but that on consideration he thought that was not the true test of defendant's liability; that it might be that defendant did not anticipate, and was not bound to anticipate, that plaintiff's cottage would be burnt as the result of its negligence; but yet, if it was aware that the heaps were lying by the side of the rails, and that it was a dry season, and that therefore by being left there the heaps were likely to catch fire, defendant was bound to provide against all circumstances that might result from this, and was responsible for all natural consequences of it. And with this agreed all the judges. Channell, B., said that where there is no direct evidence of negligence, the question what a reasonable man might foresee is of importance in considering whether there is evidence for the jury of negligence or not. And Mr. Justice Blackburn said that what the defendant might reasonably anticipate was material only with reference to the question whether it was

negligent or not, but could not alter its liability if it was negligent.

In *Rylands* v. *Fletcher*, L. R. 3 Ex. 352, in the House of Lords, Lord Cranworth says that in considering whether a defendant is liable to a plaintiff for damage that the latter has sustained, the question in general is, not whether the defendant has acted with due care and caution, but whether his acts occasioned the damage; that this is all well explained in the old case of *Lambert* v. *Bessey*, reported by Sir Thomas Raymond; that the doctrine is founded in good sense; for where one, in managing his own affairs, causes, however innocently, damage to another, it is obviously only just that he should be the party to suffer; that he is bound so to use his own as not to injure another.

In *Smith* v. *Fletcher*, L. R. 7 Exch. Cases, 305, defendants' mines adjoined and communicated with plaintiff's mines, and on the surface of defendants' land were certain hollows and openings, partly caused by defendants' workings and partly made to facilitate them. Across the surface of defendants' land there ran a brook, which they had diverted from its original course into an artificial channel they had made, and which by reason of exceptionally heavy rains overflowed its banks, and quantities of water poured from it into said hollows and openings, where already the rains had caused an unusual amount of water to collect, and thence, through fissures and cracks, water passed into defendants' mine, and so into plaintiff's mine. If the land had been in its natural condition, the water would have spread over the surface and done no harm. The defendants tendered evidence to show that they had taken every reasonable precaution to guard against ordinary emergencies, and that they had, by diverting and improving the water-course and otherwise, greatly lessened the chance of water escaping from the surface of the land into their own mines, and thence into the plaintiff's mine; and contended

that they were not liable for the consequences of an exceptional flood. It was conceded that they had not been guilty of any personal negligence. But the court ruled that they were absolutely liable for the consequences, and rejected the evidence, and a verdict was taken for the plaintiff, which was allowed to stand. Baron Bramwell, in disposing of the case *in banc*, said that the defendants for their own purposes, and without providing the means of its getting away without hurt, brought the water to the place whence it escaped and did the mischief, and that that made a case against them calling for an answer, and that they answered, "We brought the water there, indeed, and did not provide a sufficient outlet for it, but had we not altered the original course of the stream, it would have escaped in greater quantities and done more mischief," which, he said, was no answer. See *Cahill* v. *Eastman*, 18 Minn. 324 (10 Am. Rep. 184.)

In the case at bar the defendant, for purposes of its own, wrongfully turned the brook from its natural channel, and let it flow towards plaintiff's quarry, not knowing what would happen, whereby large and unusual quantities of water were brought to and accumulated in the Marble Company's abandoned quarries, and it was the duty of the defendants to see that no damage was thereby done; and the fact that it did not know and had no reason to suspect that the plaintiff's predecessors had worked their quarry out of bounds and thereby weakened the wall between it and the adjacent quarry, makes no difference, unless such fact constitutes contributory negligence imputable to the plaintiff.

Now, an act or omission of a party injured, or of those for whose acts and omissions he is responsible, in order to constitute contributory negligence, must have related to something in respect of which he or they owed to the defendant, or to those in whose place he stands, the duty of being careful, and have been negligent, and in the produc-

tion of the injury have operated as a proximate cause, or as one of the proximate causes, and not have been merely a condition. It follows, therefore, that when there is no duty there can be no negligence.

In working their quarry the plaintiff's predecessors did not know, and could not possibly anticipate, the then non-existent circumstances, that years afterwards the defendant would build a new road where it did in 1884, and wrongfully turn the brook into the quarries above, whereby their quarry would be endangered if they weakened the wall by working out of bounds. Their act in this respect was not wrongful as to the defendant, and they owed the defendant no duty concerning it, and therefore negligence is not predicable of it, even though it was wrongful as to the Marble Company, with the rights of which the defendant in no way connects itself. The state of the wall, legally considered, was not a proximate cause of the injury, but was merely a condition that made the injury possible.

*Judgment affirmed.*