## CHICAGO, R. I. & P. RY. CO. v. MOORE.

No. 2184.   Opinion Filed October 23, 1912.

Rehearing denied December 24, 1912.

(129 Pac. 67.)

**MASTER AND SERVANT—Injuries to Servant — Appliances — Proximate Cause of Injury.** Where a shaft on an engine was broken in such a way as that an inspection would have discovered the break, and it should have been foreseen that the break would make it necessary to repair or remove the shaft while on the road, and the engine was sent out in this condition and broke down on the road, the failure to inspect and repair was the proximate cause of the injury; and the company is liable for injuries received by the fireman in attempting to repair, although it was his duty to repair while on the road in cases of emergency.

(Syllabus by Rosser, C.)

*Error from District Court, Pottawatomie County;*
*Roy Hoffman, Judge.*

Action by E. W. Moore against the Chicago, Rock Island & Pacific Railway Company.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*C. O. Blake, H. B. Low, R. J. Roberts, W. H. Moore,* and *J. H. Woods,* for plaintiff in error.

*H. H. Smith* and *W. T. Williams,* for defendant in error.

Opinion by ROSSER, C.   The plaintiff, E. W. Moore, brought this suit against the defendant, the Chicago, Rock Island & Pacific Railway Company, hereinafter referred to as the company, to recover damages for personal injuries sustained while in the employ of the company.

The plaintiff was employed by the company as a fireman on one of its locomotive engines, and the engine on which he worked ran between Shawnee and Haileyville.   On the 8th of February, 1908, while running from Haileyville to Shawnee, the engine got out of order.   An examination disclosed that, what is called in the testimony, the "eccentric" was broken.   It appears that the eccentric mentioned is connected with the reverse lever,

and controls the engine as to traveling forward or backward. The eccentric blade or shaft is fastened to the axle with what are called "straps," and the straps are fastened on with bolts. It was necessary to remove the eccentric, and the plaintiff and engineer went to work to remove it. The engineer worked at the end connected with the links, which are attached to the reverse lever. The plaintiff worked at the other end. When he loosened the bolts, the straps fell and broke and crushed his fingers. ·An examination showed that the blade had been broken nearly all the way across, and that only about an inch, or inch and a half, of the distance across the blade had been freshly broken. The break for the remaining distance across the blade had been done so long that the ends had become black and rusty. The evidence showed that it was the duty of the fireman to assist the engineer in making repairs, should the necessity arise when out on the road. It was the duty of the roundhouse foreman to inspect engines before they were sent out. From the nature of the break in the eccentric, the jury had the right to presume that a proper inspection would have discovered it.

There was a verdict and judgment for plaintiff, and defendant has appealed.

The defendant contends that the failure to inspect was not the proximate cause of the injury, and that no higher degree of liability was imposed upon the company than if there had been no defect existing at the time the engine was sent out, and the necessity for repairs had been caused by some accident occurring after the engine went out.

Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the case, or doing what such a person would not have done. *Railroad Co. v. Jones,* 95 U. S. 441, 24 L. Ed. 506. In Whittaker's Smith on Negligence it is said that negligence, in law, is "a breach of duty unintentional and proximately producing injury to another possessing equal rights." If limited to actionable negligence, this definition is correct; but an act may be negligent without being the proximate cause of an injury, and hence not actionable.

The failure to inspect the engine in this case was negligence. It was the duty of the company to inspect and use due care to send out its engines with all their parts in good condition. If, by reason of the failure to inspect, the broken part had derailed the engine and injured the plaintiff, there would be no question as to his right to recover. The connection between the negligence and the injury would have been direct, natural, and continuous. But under the facts of this case the question is more difficult. The question here is whether the negligence is the proximate cause of the injury.

In *Milwaukee & St. Paul R. Co. v. Kellogg*, 94 U. S. 469, 24 L. Ed. 256, Mr. Justice Strong said:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. *Scott v. Shepherd* (Squib Case), 2 W. Bl. 892. The question always is: Was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to misfeasance or nonfeasance. They are not, when there is sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause the original wrong must be considered as reaching to the effect, and proxi-

mate to it. The inquiry must therefore always be whether there was any intermediate cause, disconnected from the primary fault, and self-operating, which produced the injury. Here lies the difficulty. But the inquiry must be answered in accordance with common understanding."

It is fundamental that in order to create a liability for negligence the negligence must be the proximate, and not merely the remote, cause of the injury. *"In jure non remota causa sed proxima spectatur."* It is also the law that, where there is an intervening human agency between the act of negligence and the injury, the negligence is not the proximate cause of the injury, unless a reasonable person should have foreseen that the negligence naturally would have put the intervening agency to work. The rule is otherwise where the injury is produced by the negligence through a continuous succession of occurrences, following each other naturally and directly in obedience to natural law of cause and effect. In such cases the person guilty of negligence is liable, whether he could reasonably have foreseen the result or not. The rule in this regard is well stated in *Gilson v. Delaware & Hudson Canal Co.,* 65 Vt. 213, 26 Atl. 70, 36 Am. St. Rep. 802, as follows:

"It is a maxim of the law that the immediate, not the remote, cause of an event is regarded. In the application of this maxim, the law rejects, as not constituting ground for an action, damage not flowing proximately from the act complained of. In other words, the law always refers the damage to the proximate, not to the remote, cause. It is laid down in many cases and by leading text-writers that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable sequence of the negligence or the wrongful act, and that it was such as might, or ought to, have been foreseen in the light of the attending circumstances. But this rule is no test in cases where no intervening efficient cause is found between the original wrongful act and the injurious consequences complained of, and in which such consequences, although not probable, have actually flowed in unbroken sequence from the original wrongful act."

But in ascertaining whether the act or omission relied upon as negligent was in fact so, it is always proper to inquire whether

a reasonable man would have anticipated injury from the act or omission.

In the case of *Smith v. London & Southwestern Ry. Co.,* Lr. 6 C. P. 14, Blackburn, J., delivering an oral opinion, and therefore using a strong and vigorous style rarely attained in written opinions, and using illustrations applicable to the condition of English society, said:

"If the negligence were once established, it would be no answer that it did much more damage than was expected. If a man fires a gun across a road, where he may reasonably anticipate that persons will be passing, and hits some one, he is guilty of negligence and liable for the injury he has caused; but if he fires in his own wood, where he cannot reasonably anticipate that any one will be, he is not liable to any one whom he shoots, which shews that what a person may reasonably anticipate is important in considering whether he has been negligent; but if a person fires across a road when it is dangerous to do so, and kills a man who is in the receipt of a large income, he is liable for the whole damage, however great, that may have resulted to his family, and cannot set up that he could not have reasonably expected to have injured any one but a labourer."

In the same case Channell, B., said:

"I quite agree that where there is no direct evidence of negligence the question what a reasonable man might foresee is of importance in considering the question whether there is evidence for the jury of negligence or not, and this is what was meant by Bramwell, B., in his judgment in *Blyth v. Birmingham Water Works Co.,* referred to by Mr. Kingdon; but when it has been once determined that there is evidence of negligence the person guilty of it is equally liable for its consequences, whether he could have foreseen them or not."

In Hughes, G. & R. of Law, text index "Negligence," the rule is stated thus:

"*Whoever does a wrongful act is liable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if such intervening causes were set in motion by the original wrongdoer. If an independent agency intervene, this will break the causal connection, unless, under all the circumstances of the case, this intervention itself should have been anticipated.*" (Italics ours.)

This principle has been applied in a number of cases, and in a number of different conditions.   See *Fishburn v. Burlington, etc., R. Co.,* 127 Iowa, 483, 103 N. W. 481; *Burk v. Creamery Package Mfg. Co.,* 126 Iowa, 730, 102 N. W. 793, 106 Am. St. Rep. 377; *Lane v. Atlantic,* 111 Mass. 136.

Applying the rule laid down above, is the defendant liable? The injury to plaintiff did not follow in direct and unbroken sequence from the defendant's negligence.   The independent agency of the plaintiff himself intervened, but it is believed that the company is liable.   A somewhat similar case is *Fishburn v. Burlington, etc., R. Co.,* 127 Iowa, 483, 103 N. W. 481.   In that case the injured person was a child of tender years.   A doubt was there expressed as to whether a person being of mature years would have been guilty of contributory negligence in that case. A fence had been so defectively constructed that it was blown over by the wind.   The child that was afterwards injured, assisted by another child, set up the fence.   It was afterwards blown down again, and struck and injured the child.   The court said:

"If the owner of the garden, or any person of mature years interested therein, had discovered the prostrate panels, and restored them to their position against the wire fence, and had thereafter been injured by reason of such panels being again blown down, he might possibly be precluded from a recovery of damages on the ground of contributory negligence; but we feel very certain his act would not be such an independent intervening cause, disconnected from the primary act complained of, and not reasonably to have been anticipated by the defendants, as would be required to relieve the latter from liability for negligence in the original construction."

But it is not suggested in the opinion that an adult would have been guilty of contributory negligence if, in attempting to set up the fence, it had then and there blown over and injured him.

The plaintiff in this case was not guilty of negligence in attempting to repair the engine.   That the defect would cause the engine to break down, and consequently require the plaintiff to attempt to repair it, was in every way probable, and should

have been anticipated. It is true that it was his duty to make repairs while on the road; and it is also true that he could not recover for injuries received while making such repairs, where the repairs were not made necessary through the fault of the company. Under the rules promulgated by the company for the government of its employees, the company was required to inspect and to use care to send out its engines in good condition. It was the duty of the company to use due care to prevent the necessity for repairs on the road; and when by its failure to use such care the repairs were made necessary, and the risk of injury to plaintiff thereby increased, it became liable for injuries received while making them. The danger of injury while making such repairs was a risk against which it was the duty of the company to use care to protect the plaintiff. He was to repair only in cases of emergencies, such as the company, by reasonable care, could not provide against; and the company had no right to place him in the employment of making repairs, where by reasonable care it could have prevented the necessity for such employment.

In *Conlon v. Ohio Short Line Railway Co.*, 23 Ore. 499, 32 Pac. 397, the court said:

"The defendant claims that, under the facts disclosed by the evidence, it was not liable for the injury which the plaintiff sustained, because the risk arising from the plaintiff's employment, in assisting to remove the obstruction from the track, was not increased by any act of omission or commission of the defendant, but the correctness of this proposition depends upon the fact whether the defendant was negligent in not using proper care before the storm to keep the bridge in repair, or to ascertain the condition of the track or bridge after the storm; for if the injury which the plaintiff sustained was the result of an omission of the defendant to take the proper precautionary measures, either before or after the storm, to lessen or avoid the liability to accident, it did not arise out of any risk which the plaintiff assumed as incident to his employment. * * * It may be admitted that if the performance of his duties had required that he should ride over the track from place to place, where his services were needed to clear the track of obstructions, the risk he assumed included the danger of bridges being undermined or swept out by freshets or floods, when they occurred from

inevitable accident, but not when the danger might have been ascertained and averted in time to avoid the injury by the exercise of reasonable care or of proper precaution."

The facts of the case from which the above quotation is made are not at all similar to the facts of the case at bar; but the principle that, though a man assumes the risk of a certain employment, it is the duty of the master to protect him from the risk, as far as he reasonably can, is there decided. See, also, *Greenlee v. Southern Railway Co.,* 122 N. C. 977, 30 S. E. 115, 41 L. R. A. 399, 65 Am. St. Rep. 734.

In *Pullman Palace Car Co. v. Laack,* 143 Ill. 242, 32 N. E. 285, 18 L. R. A. 215, the plaintiff was employed by the defendant to burn brick with crude oil, and before his injury had assisted in burning several kilns of brick. On the day of the injury a change had been made in one of the supply pipes of oil, so that it could only be cut off at two points, one at the tank and the other where the small burner pipes join the feed pipes. There had formerly been a stopcock at the joining of the supply pipe and the feed pipe. The hose carrying oil from the car which supplied it to the kilns burst, and the oil caught fire. The employees were unable, on account of the heat, to cut off the flow of oil nearest the kiln, and the plaintiff, while trying to move the car, was burnt because the flow of oil could not be cut off. If the middle cock had been on the supply pipe, it could have been stopped. In sustaining a judgment for plaintiff, the court said:

"That the master, although not held to guarantee the absolute perfection and suitableness of the machinery and appliances furnished the servants, is nevertheless bound to provide that which is safe and suitable for carrying on the business in which the servant is engaged, and is held to the employment of every precaution which a reasonably prudent man would exercise under like circumstances, is well established. Arising by implication from the contract of employment, as well as from reasons of public policy and natural justice, the duty rests upon the master, whether a corporation or a natural person, not to expose the servant, in the discharge of his duty, to perils and dangers against which the master may guard by the exercise of reasonable care. *Pennsylvania Co. v. Lynch,* 90 Ill. 333; *Fairbank v.*

*Haentzsche,* 73 Ill. 236; *Missouri Furnace Co. v. Abend,* 107 Ill. 44 [47 Am. Rep. 425]. Hence the rule is that the master must, either personally or by his agent, if an individual, and by its agents, if a corporation, exercise reasonable and proper care, taking into consideration the nature of the business and the instrumentalities employed, to provide and keep in suitable repair and condition safe and suitable machinery and appliances, adequately sufficient for use by the servant in and about the business in which they are to be used by him; and if a servant is injured in consequence of a neglect of such duty or a negligent discharge of it, he being in the exercise of ordinary care for his own safety, the master is liable. Cases *supra; Chicago & Alton Railroad·Co.· v. Platt,* 89 Ill. 141; *Railroad Co. v. Troesch,* 68 Ill. 545 [18 Am. Rep. 578]; *Calumet Iron & Steel Co. v. Martin,* 115 Ill. 358 [3 N. E. 456]; Wood on Master and Servant, sec. 326 *et seq.;* Beach on Contributory Neg. sec. 123; *Hough v. Railroad Co.,* 110 U. S. 213 [25 L. Ed. 612]."

Of course, if the defendant had used due care to send out the engine in good condition, and the shaft had broken after it went out, the defendant would not have been liable. Neither could an employee regularly engaged in repairing the machinery of the company recover for an injury received as the one complained of here, however negligently the necessity for repairs might have been caused, because it was his regular business to repair, and the danger in his employment was exactly the same, whether the repairs were made necessary by negligence or accident. But in this case the repairs, under the circumstances, were made necessary by the negligence of the company, and enhanced the risk of injury. The intervention of the act of the plaintiff between the negligence of the company and the injury should have been anticipated. When the engine broke, it became necessary to repair it. The plaintiff could not go off and leave it. It should have been foreseen that he would attempt to remedy the defect and thereby incur the risk of injury.

The defendant is charged with knowledge of the defect, and knowing the defect it must have known that some sort of injury was likely to result. It must have known that if nothing worse happened the shaft would break, and that it would be necessary to repair it, and thereby the risk of injury would be

enhanced. It is true, as argued by the defendant, the plaintiff could have gone off and left the engine, but it should have been so anticipated that he would not do so, and that he would attempt to repair it just as he did.

The judgment should be affirmed.

By the Court: It is so ordered.