## WICHITA FALLS & N. W. RY. CO. v. COVER.

No. 8174—Opinion Filed Nov. 28, 1916.

Rehearing Denied May 1, 1917.

(164 Pac. 660.)

### 1. Negligence—"Proximate Cause."

An act is the "proximate cause" of an injury when such injury was the natural and probable consequence of the act, and one that ought to have been foreseen in the light of the attending circumstances.

### 2. Same—Question for Court or Jury.

Ordinarily the question of proximate cause is one of fact for the jury, but where the facts are not in dispute and reasonable men cannot differ on the question, it may become one of law for the court.

### 3. Master and Servant—Injuries—Burden of Proof.

In order to recover damages for an injury because of negligence, the burden is on the plaintiff, not only to show negligence, but to prove that such negligence was the proximate cause of the injury, which should have been foreseen in the light of the attending circumstances.

### 4. Carriers—Personal Injury—Question for Jury—Proximate Cause.

Plaintiff intended to leave M. on a train scheduled to depart at 6:45 p. m. He, being up town five or six blocks from the depot a few minutes before 6:40, called the ticket agent over the telephone and asked about the train, and was told that it was late and would not leave "until about 7:15 or later." He started for the station about 6:50, and when he arrived within 60 or 75 feet of the station platform saw the train moving out, and ran and attempted to get upon it. He grabbed the iron railing about the steps with his left hand and the handhold on the gate with his right hand, and succeeded in getting both feet upon the steps, when the gate swung out and he fell off and rolled under the car and was injured. Held, that, assuming that the agent gave incorrect information as to the time of the departure of the train, and that the handhold of the gate was defective, and that these acts constituted negligence on the part of the railway company, it does not follow that such negligence was the proximate cause of the injury.

(Syllabus by Galbraith, C.)

Error from District Court, Tillman County; T. P. Clay, Assigned Judge.

Action by C. E. Cover against the Wichita Falls & Northwestern Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

Mounts & Davis, for plaintiff in error.

V. E. McInnis, for defendant in error.

Opinion by GALBRAITH, C. This appeal is from a judgment rendered upon the verdict of a jury in favor of the defendant in error and against the plaintiff in error in an action for personal injuries.

The defendant in error presents a motion to dismiss the appeal on the ground that he did not waive the suggestion of amendment to the case-made and was not given an opportunity to do so. We have examined the record and find that the case-made was served within the time as extended by a valid order, and that an opportunity was offered to defendant in error to suggest amendments, and that the case-made was properly settled and filed, and conclude that the motion should be overruled.

It appears that Cover had been employed as a railroad brakeman for seven or eight years, and for about one year by the plaintiff in error; that he voluntarily left its services a few months prior to the accident and followed the vocation of repairing flues in various towns in Southwestern Oklahoma; that he had worked at the city of Mangum for two or three days prior to the 9th day of December, 1914; that on that day he was advised by a railroad man that if he would go to Woodward, the end of the division on the plaintiff in error's line, he could secure a job as brakeman; that he decided to start to Woodward on train No. 1, which was scheduled to leave Mangum at 6:45 p. m. This train, however, did not run through to Woodward, but stopped at Elk City, the through train from Mangum to Woodward passed Mangum in the early forenoon. A short time before the time train No. 1, was due, Cover called the agent of the railway company over the telephone and inquired about the train, and was told that it was late. He testified as follows:

"Q. What did he tell you? A. He told me it was due to leave about 7:15 or a little later. Q. What did you then do Mr. Cover? A. Ate supper. Q. What time do you suppose it was when you got through supper? A. That I don't know, about 6:45 I expect. Q. How far was it from the restaurant to the railroad, down to the depot? A. I don't know, but I should judge about five or six blocks. Q. Did you start to the depot then? A. Directly after I got supper. Q. What time do you suppose it was when you left the restaurant and started for the depot? A. I should judge about 6:50."

The witness further testified that when he arrived near the depot, within 60 or 75 feet of it, he saw the train moving out and ran to catch it and attempted to get on. He testified as follows:

"Q. What did you do? A. I grabbed hold like a man would ordinarily. Q. Do you

know what coach you attempted to get on? A. No. I do not, for sure. Q. Do you know whether it was the front or rear end of the coach? A. It was the front end of the coach. Q. Which side of the train were you on? A. Left-hand side. Q. The train was going north and you were on the left-hand side? A. Yes, sir. Q. Did you catch hold of the car? A. Yes, sir. Q. How did you catch hold of the car? A. Got hold of the beam with my left hand and caught hold of the gate with my right hand. Q. What happened when you caught hold of the gate? A. I heard a noise of some kind, and the gate come loose and swung out with me. Q. Did you get up on the platform before you heard this noise? A. Yes, sir. Q. Up upon the platform or upon the steps? A. Upon the steps. Q. With one foot or both feet? Describe to the jury what you had done. A. I got up with both feet; I stepped up with one foot first. Q. Which foot did you step up with first? A. Stepped up with my left foot. Q. Did you get your left foot up? A. Yes, sir. Q. During the time you were getting up and your weight pulled against this gate that you had hold of, and did it let loose during the time? A. Not then. Q. It never let loose with reference—when did it let loose with reference to the time that you got up? A. After I got up with both feet. Q. Were you at that time balanced, had you gotten your balance? A. I had just straightened up after I caught hold of the gate and the end came loose. Q. When the gate came loose what happened? A. I fell to the ground and received — * * * Q. What happened to your foot or leg at that time? A. Well I fell to my right side and went under and the wheel went over my leg, that is all."

It appeared that the train was registered in at Mangum on this afternoon at 7:04 and left there five or six minutes later, and at that time of day it was quite dark. None of the train men or employes of the company saw Cover, or knew that he was attempting to get on the moving train, and the employes in charge of the train did not know of the accident until some three hours later, after the train had reached Elk City.

The acts of negligence charged as fixing the liability of the railway company for the injury are the misinformation given by the agent to Cover over the telephone when he inquired about the time of the departure of the train, and the failure of the company to have the gate of the car properly equipped with handholes. It is argued that these were acts of negligence on the part of the railway company, and that they were the proximate cause of the injury, that if the agent had correctly advised Cover as to the time of the departure of the train, he would have gone to the depot earlier, and in time to secure a ticket and board the train before it started, and if the handhold of the car where he

attempted to get on had been in proper condition and safe, he would not have fallen, and therefore would not have been injured.

It is assigned as error that the verdict and judgment are contrary to law, and that the court erred in submitting the cause to the jury. The phrase "proximate cause" has been the occasion of much discussion in the text-books and decisions. There is a practical agreement on the definition that proximate cause is "the immediate, direct, or efficient cause," but the application of the definition to the particular facts of each particular case has been the occasion for much confusion in the decisions of the several courts. Thompson on Negligence, par. 47, expresses the general agreement among the authorities in defining—

"proximate cause to be the ordinary results of negligence, such as is usual and therefore might have been expected."

In fact the defendant in error seems to recognize this definition as correct, and admits that to establish actionable negligence it must be shown that the injury proximately resulted from the acts complained of. In the cases relied upon from our courts (Lisle v. Anderson, 61 Okla. 68, 159 Pac. 278, L. R. A. 1917A, 128) this definition is recognized in the holding that to establish actionable negligence it is essential to show that the injury resulted as "the natural and probable consequence of the act."

In C., R. I. & P. R. Co. v. McAlester, 39 Okla. 153, 134 Pac. 661, the same definition of actionable negligence is applied to the facts set out in the opinion. In that case the acts of negligence charged were: Failure to hold the train at the station the usual length of time; and (2) the direction given by the brakeman to jump off. The injury received from jumping off a moving train in the dark in that case was clearly the natural and probable result of the negligence complained of, and should have been contemplated.

Another difficulty in this character of cases is to determine whether or not the question of proximate cause is a question of fact for the jury, or a question of law for the court. In St. L. & S. F. R. Co. v. Davis, 37 Okla. 345, 132 Pac. 337, is is said:

"The question, What is the proximate cause of an injury? is ordinarily a question for the jury; but the burden is always on the plaintiff, in an action for personal injuries, to show that the negligence charged was the proximate cause of the injury. In Milwaukee & St. P. Ry. Co. v. Kellog, 94 U. S. 475, 24 L. Ed. 256, in this connection it was said: 'The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a ques-

tion of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it.' "

In Midland Valley Ry. Co. v. Bailey, 34 Okla. 193, 124 Pac. 987, it was held to be a question of law for the court. The third paragraph of the syllabus reads:

"Negligence is a breach of duty. In order for it to exist, there must be both a duty and breach of it. It is the duty of the court in its instructions to advise the jury of the duties which the law imposes upon the parties, and where there is conflict in the evidence, it is the function of the jury to determine whether these duties imposed by the law have been violated. The jury is the judge of the fact, and not of the law."

Under the first paragraph of the syllabus the application is made of this rule to facts of that case as follows:

"The plaintiff entered the defendant's train for the purpose of assisting a sick passenger. The conductor and other employes were not notified that it was her intention to alight from the train after seating the sick person, nor were there any facts or circumstances charging them with notice of her intention. After making the usual stop, the station being clear, the conductor started his train, and the plaintiff alighted from it while it was in motion. Held, that she was not entitled to recover."

In A., T. & S. F. R. Co. v. St. L. & S. F. R. Co. et al., 41 Okla. 80, 135 Pac 353, 48 L. R. A. (N. S.) 509, it was held under the facts of that case that the question of proximate cause was one for the jury. In St. L & S. F. R. Co. v. Dreyfus et al., 42 Okla. 401, 141 Pac. 773, it was likewise held to be a question for the jury.

In Hughes v. C., R. I. & P. R. Co., 35 Okla. 482, 130 Pac. 591, a great many authorities are collected and quotations set out from decisions discussing the question of proximate cause in negligence cases, and it is there held that it was prejudicial error to refuse the following instruction:

"You are instructed that, although you may believe from the evidence that the injury complained of was occasioned by the act of the defendant, still, if you further believe from the evidence that such injury was not the natural result of the acts of the defendant, and could not have been foreseen, or reasonably expected to result from the conduct of the defendant, then the defendant would not be liable."

In the Southern Kansas Ry. Co. of Texas v. Emmett (Tex. Civ. App.) 139 S. W. 44, the circumstances connected with the accident were similar in many respects to those in the case at bar. There the person injured had purchased a ticket and inquired of the ticket agent the time of the arrival of the train, and was told that it would be due in 31 minutes. He then went out of the depot to a restaurant, 250 yards distance from the station, to get his breakfast. About 15 minutes later he looked out and saw the train moving away from the station. He then ran and attempted to get aboard, getting upon the steps at the front end of the passenger coach with his feet on the steps, when the train gave a lurch, releasing his hold, and he fell off and the train ran over him. The negligence charged was the misinformation given by the agent as to the time of the arrival of the train, and negligent management of the movement of the train causing the lurch that caused him to fall therefrom. In that case the court announced the same rule as to proximate cause embraced in the instruction above quoted from the Hughes Case, supra, and held that the agent's misstatement of the time of the arrival of the train, assuming it to have been negligence, was not the proximate cause of the plaintiff's injury. Ordinarily the question of proximate cause is one of fact for the jury, but in those cases where reasonable minds cannot differ upon the question that the injury was not the natural and probable result of the negligence complained of, then it would seem to become one of law which the court may withdraw from the jury.

We are inclined to agree with the contention of the defendant in error, for the purpose of this decision, that Cover, when he asked the agent over the telephone about the arrival of the train, was entitled to correct information, and the failure to give such information was negligence. Whether the company owed him a duty to keep its gates and handholds on its cars so that they would be safe for one to get aboard a moving train is not so clear. He was not a passenger; the company had no notice that he intended to become a passenger on its train; it clearly owed him no duty that it did not owe to every other citizen of the community. But assuming without deciding that the railway owed Cover a duty to have a good, sound handhold on its car, and that such handholds were not on this particular car, and that it was negligent in that respect, the question arises. Does it follow that a liability on the part of the company has been established under the facts of this case? Can there be any disagreement among reasonable minds considering the acts of negligence charged in connection with all the circumstances shown in the record whether or not the injury proximately resulted from such acts, and that it was the natural and prob-

able result and should have been foreseen? Can it be said in any aspect of the case that the natural and probable result of the failure to give correct information as to the departure of the train, and the failure to have a perfectly safe handhold on this particular car, was the proximate cause of the plaintiff losing his leg? Could such a thing have been reasonably contemplated by the agent when he gave the false information, if he gave such, as to the departure of the train, or of the servants when they permitted the handholds to become defective? Would any reasonable man have expected that a party, wishing to board that train, or nearing the station, after night, and seeing the train moving out, when he is 60 or 75 feet away, would run and attempt to get aboard the moving train? We think not.

It seems clear that the evidence fails to show the injury sustained was the proximate result and natural consequence of the negligent acts complained of, and therefore the judgment is contrary to law.

Wherefore the judgment should be reversed, and the cause remanded for further proceedings.

By the Court: It is so ordered.