**PONCA CITY ICE CO. v. ROBERTSON.**

No. 8636—Opinion Filed Nov. 20, 1917.

Rehearing Denied Dec. 31, 1917.

(169 Pac. 1111.)

(Syllabus.)

**1. Master and Servant — Master's Duty — Safe Place to Work—Degree of Care.**

It is the duty of a master to furnish his servant with a reasonably safe place to work, and to maintain said place in a reasonably safe condition, and in the discharge of this duty he is held to that degree of care which an ordinarily prudent person would exercise under like circumstances.

**2. Negligence — Question for Jury.**

What is or is not negligence is ordinarily a question of fact for the jury, and where the standard of duty is not fixed but variable, and shifts with the circumstances of the case, it is incapable of being defined as a matter of law, and where there is sufficient evidence it must be submitted to the jury to determine what it is and whether it has been complied with.

**3. Master and Servant—Personal Injury—Negligence—Sufficiency of Evidence.**

Evidence examined, and held sufficient to reasonably support a verdict in favor of plaintiff.

**4. Trial — Instructions — Construction as a Whole.**

Instructions must be construed as a whole and construed together, and it is not necessary that any particular paragraph thereof contain all the law of the case. It is sufficient if when taken together and considered as a whole they fairly present the law of the case, and there is no conflict between the different paragraphs thereof.

**5. Appeal and Error—Master and Servant —Trial—Action for Injury — Instructions—Harmless Error.**

Instructions examined and held, that substantial justice having been done by the verdict and judgment, and no prejudicial errors appearing in the instructions, the judgment will be affirmed.

Error from District Court, Kay County; W. M. Bowles, Judge.

Action by Myrtle Robertson against the Ponca City Ice Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Breck Moss, Glen L. Bruner, and W. B. Clark, for plaintiff in error.

P. S. Nagle and J. F. King, for defendant in error.

HARDY, J. Myrtle Robertson commenced this action in the district court of Kay county against the Ponca City Ice Company, a corporation, to recover damages for the death of her husband, George L. Robertson, alleged to have been caused by the negligence of the defendant. The parties will be referred to as they appeared in the trial court. Deceased was in the employ of defendant as assistant engineer, and received his death as the result of an explosion which occurred in a well on the premises of defendant about the 9th day of June, 1915. Verdict was for plaintiff and defendant brings the case here. The specific acts of negligence relied upon are that defendant failed to furnish deceased a safe place in which to work, and failed to examine or test said well before he went into same.

Ponca City was and is located in the midst of a large and well developed natural gas field, and some gas wells are located in the city. Defendant's office was located in the northeast corner of the block, and the manufacturing part of the plant was in the southwest corner, about 100 feet from the

east side. The street immediately east and adjoining the plant was paved with asphalt. Between the paving and the cement sidewalk was a small parking of natural ground. About 100 feet south of the office and about 8 feet from the sidewalk was situated the well in which plaintiff met his death. This well was about 50 feet deep, 8 feet in diameter, walled with rock and covered with a cement top, 8 to 10 inches thick, reinforced with railroad iron and pipe. Through this top was a manhole about 2 by 3 feet covered with a frame made of timbers called 2x4's edgewise and then by 2x4's crosswise inside, stood on edge and covered with wire screen. Over the well was constructed a small frame building containing small windows and covered with a shingled roof. Ponca City was, and for many years had been, piped for natural gas; one of the mains being in the street along the east side of defendant's plant from which a supply pipe ran west along the south side of the plant within 36 feet of and south of the well. Immediately south of this well was a regulator in the supply pipe. In the year 1912 defendant's foreman took up this supply pipe running from defendant's boilers to the regulator, which was found to be corroded, rotten, and very badly pitted, the witness describing it in some places as being thin as tissue paper. The pipe running from the regulator to the main in the street was not taken up. Persons who lived in the immediate neighborhood, or had their place of business close to the premises of defendant, testified that for a number of years gas had been escaping around defendant's premises in large quantities, and that at times it was so offensive they could hardly stand it. One witness who lived about 30 feet south of the plant testified that she could smell the gas anywhere on her place when it was sultry or when the wind was from the north, and that at times the smell was awful, and that she notified defendant's foreman a number of times about this condition. A leak in the main along the street east of defendant's premises had been patched some four or five years before.

To this evidence defendant interposed a demurrer, which was overruled, and thereafter offered evidence in its own behalf to show that various employes had gone down into the well on former occasions, and that about 10 days or two weeks before the explosion one of its employes had gone down in the well carrying a lighted lantern, and no smell of gas was detected at that time. At the close of all the evidence, an instructed verdict for defendant was requested and denied.

It was the duty of defendant to furnish deceased with a reasonably safe place in which to work, and to maintain said place in a reasonably safe condition, and in the discharge of this duty it was held to the exercise of that degree of care which an ordinarily prudent person would exercise under like circumstances. Sulsberger & Sons Co. v. Castleberry, 40 Okla. 613, 139 Pac. 837; C., R. I. & P. Ry. Co. v. Townes, 43 Okla. 568, 143 Pac. 680; Interstate Comp. Co. v. Arthur, 53 Okla. 212, 155 Pac. 861. And it was also the duty of the defendant to make such an examination and test of the well as a reasonably prudent man would have deemed necessary under the same or similar circumstances for the discovery of possible defects or dangers. 3 Labatt's Master & Servant, § 1060; 4 Thompson's Neg. § 3783.

As a rule the fact of an accident or an injury to an employe in the course of his employment carries with it no presumption of negligence upon the part of the employer, and the burden is upon the plaintiff in an action for damages for injuries alleged to have occurred as a result of the employer's negligence to establish by a preponderance of the evidence that such accident or injury was the result of negligence upon the part of the employer. Neeley v Southwestern Cotton Oil Co., 13 Okla. 356, 75 Pac. 573, 64 L. R. A. 145; St. L. & S. F. R. Co. v. Rushing, 31 Okla. 231, 120 Pac. 973; Phoenix Ptg. Co. v. Durham, 32 Okla. 575, 122 Pac. 708, 38 L. R. A. (N. S.) 1191; C., R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 Pac. 876; Smith v. C., R. I. & P. Ry. Co., 42 Okla. 577, 142 Pac. 398. And the causal connection between the negligence complained of and the injuries alleged must be shown. In other words, it must be made to appear that the negligence of the master complained of was the proximate cause of the injuries alleged. St. L. & S. F. Ry. Co. v. Hess, 34 Okla. 615, 126 Pac. 760; St. L. & S. F. Ry. Co. v. Darnell, Adm'x, 42 Okla. 394, 141 Pac. 785; Clinton & O. W. Ry. Co. v. Dunlap, 56 Okla. 755, 156 Pac. 654.

An act of negligence may be said to be the proximate cause of an injury when a man of ordinary experience and sagacity should foresee that the result might probably ensue. Bank v. Crow et al., 27 Okla. 107, 111 Pac. 210, Ann. Cas. 1912B, 647; C., R. I. & P. Ry. Co. v. Moore, 36 Okla. 450, 129 Pac. 67, 43 L. R. A. (N. S.) 701; Prickett v. Sulzburger & Sons, 57 Okla. 567, 157 Pac. 356; W. F. & N. W. Ry. Co. v. Cover, 65 Okla. 110, 164 Pac. 660; M., O. & G. Ry. Co. v. Miller, 45 Okla. 173, 145 Pac. 367;

C., R. I. & P. Ry. Co. v. Nagle, 55 Okla. 235, 154 Pac. 667. And it is an essential element of negligence that the master should have knowledge of such facts and circumstances that a man of ordinary prudence, judgment, and experience, in the light of the attending circumstances, could reasonably have foreseen that such an accident was likely to occur. Thompson, Neg. § 3774; 3 Labatt's Master & Servant, §§ 1041, 1042.

The party guilty of negligence or omission of duty is responsible for all the consequences which a prudent or experienced party, fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind. Hughes v. C., R. I. & P. Ry. Co., 35 Okla. 482, 130 Pac. 591; C. R. I. & P. Ry. v. Beatty, 27 Okla. 844, 116 Pac. 171; C., R. I. & P. Ry. v. Duran, 38 Okla. 719, 134 Pac. 876; C., R. I. & P. Ry. v. Brazzell, 40 Okla. 460, 138 Pac. 794.

What is or is not negligence is ordinarily a question of fact for the jury, and not one of law for the court, and where the standard of duty is not fixed but variable, and shifts with the circumstances of the case, it is incapable of being defined as a matter of law, and where there is sufficient evidence it must be submitted to the jury to determine what it is, and whether it has been complied with. Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 Pac. 120; Interstate Comp. Co. v. Arthur, 53 Okla. 212, 155 Pac. 861.

Tested by these rules, the evidence was sufficient to sustain the verdict of the jury. While it was not shown by positive evidence that gas from the pipe belonging to defendant which ran from the main in the street east of the plant had escaped into the well, it was proven that three years before the explosion that portion of said pipe running from the regulator to defendant's boilers was taken up and found to be badly corroded, rusted, and pitted, and in some places thin as tissue paper, and it is a reasonable inference to say that the remaining portion of the pipe was in like condition at the time, and that said condition became worse during the three years intervening before the accident. Gas was also escaping in the immediate vicinity of the well in large quantities, and such condition had existed for years. It was for the jury to say whether, under these circumstances, a reasonably prudent man would have tested the well to discover the presence of natural

gas therein before ordering deceased to go down into it, and whether defendant made a sufficient test. The tendency of natural gas to find its way along openings or crevices in the earth, and to accumulate in wells and cisterns, is well known, and the existence of defective pipes in close proximity to the well being shown, from which large quantities of gas was continually escaping, the jury were justified in finding that gas had found its way into the well from some of these places, and that a reasonably prudent man with knowledge of all the facts disclosed by the evidence could have reasonably foreseen that such gas might probably find its way into this well, and we cannot say as a matter of law that the defendant was free from negligence.

In Finson v. City of Topeka, 87 Kan. 87, 123 Pac. 723, plaintiff's intestate was killed by an explosion in a fire cistern of the city in which he was at work. The cistern was located in West Seventh street beneath the surface thereof, and had become out of repair, and plaintiff's intestate with others had gone down in the cistern for the purpose of cleaning it out and repairing its walls. For many years previous to the explosion, a gas main had been located in the street across from the fire cistern. After the explosion a large part of the main was uncovered and found to be in a broken and defective condition, and the service pipes attached thereto were found to be rusted out and perforated with holes so that in many places large quantities of natural gas were escaping therefrom. The city did not own the gas mains, but was held liable because of its negligence to furnish deceased a reasonably safe place in which to work, and it was said:

"No matter where the gas came from, if through the negligence of the city it was permitted to remain in the cistern and injured a workman the city would be liable to the same extent that any employer would be under the same circumstances."

In Henderson v. Allegheny Heating Co., 179 Pa. 513, 36 Atl. 312, plaintiff was working in a tobacco and cigar factory which was not supplied with natural gas nor with pipes for conducting same. The defendant had two lines of pipe laid in the street in front of the building, one of which was an eight-inch pipe used for the general distribution of gas in that neighborhood and the other was a three-inch pipe used in supplying gas to premises quite near to the building in which the explosion occurred. This smaller pipe passed within a few feet of the cellar wall of said building. Some months prior to the accident a sewer pipe

was laid from the rear of the building through the cellar and out beneath the smaller gas pipe into the main sewer in the street. The soil in the neighborhood was composed largely of sand and gravel. It was plaintiff's theory that gas had been escaping from a break in the small pipe and had passed through the loose soil until it reached the sewer pipe and thence followed same into the cellar where it had been accumulating until the explosion. Soon after the explosion the gas pipe immediately in front of the premises was uncovered, and an old rusty break therein was discovered. There was evidence that the company had notice of this condition, and the question whether the evidence showed negligence on the part of the defendant was held to be a question for the jury. In Coffeyville Mining & Gas Co. v. Carter, 65 Kan. 565, 70 Pac. 635, gas escaped from a gas well of defendant and passed through crevices in the earth to a cellar or basement of a brick building 50 feet away, where for some unknown cause it was exploded resulting in the death of one Carter.

These cases, together with many others that could be cited, show the tendency of natural gas to pass through the earth and accumulate in cellars or wells, and establish the proposition that the jury were warranted in finding that defendant, being held to that degree of care which would be exercised by a reasonably prudent person, should have known of this tendency and should have foreseen that an accident such as occurred might probably result and should have taken proper precautions to prevent the same, and it was for the jury to say, under the circumstances, just what acts and conduct upon its part would amount to that degree of care which a reasonably prudent person would exercise for the safety of his employes, and whether that degree of care had been exercised.

Error is assigned upon the giving of instruction No. 8, because the court attempted therein to group and state the facts hypothetically, which, if found to be true, would warrant the jury in returning a verdict for plaintiff. The instruction authorized the jury to find for the plaintiff upon two grounds: First, failure of defendant to furnish deceased a safe place to work; second, if the defendant was negligent in his failure to inspect. Defendant claims there is no evidence upon which to base this instruction or to predicate liability upon the theory of a failure to inspect, because it is not shown that gas was discovered in or about the well prior to the explosion, nor

is it shown that an inspection would have disclosed its presence therein. Of course, the instructions should be based upon the evidence, and should not submit theories unsupported thereby. Oklahoma Ry. Co. v. Christenson, 47 Okla. 132, 148 Pac. 94; Chickasaw Compress Co. v. Bow, 47 Okla. 576, 149 Pac. 1166.

The instruction did not violate this rule. There is an abundance of evidence that gas had been escaping for years in close proximity to the well, and the jury may well have found that defendant as a reasonable person, knowing of its presence, should have known of the dangers connected therewith, and that an inspection of the well prior to deceased's entry therein would have discovered the presence of gas in said well.

The correct rule is that plaintiff must show that reasonably careful inspections were not made at reasonable intervals, and must also show that if such inspections had been made they would have disclosed the dangerous condition which led to the injury in time to permit of its reparation in the exercise of reasonable care, and that where a reasonably careful and skillful inspection would not have disclosed the dangerous condition, no liability exists against the master. 4 Thompson, Neg. § 3803; 3 Labatt, Master & Servant, §§ 1057, 1058.

Knowledge on the part of the master of the dangerous condition is an element entering into his liability in an action for injuries to a servant. This knowledge, however, need not be actual knowledge of the dangerous condition, but the rule will be satisfied when facts and circumstances are shown to exist from which if the master had exercised reasonable care and diligence he would have ascertained the true condition. Bailey, Personal Injuries, § 280; C., R. I. & P. Ry. Co. v. Moore, 36 Okla. 450, 129 Pac. 67, 43 L. R. A. (N. S.) 701; Labatt, Master & Servant, § 1061; Thompson, Neg. § 3795.

In paragraph 2 of his charge, the court instructed the jury that it was the duty of the master to his servants to provide them with a reasonably safe place in which to work, and maintain said place in a reasonably safe condition. This instruction is said to be erroneous because of the manner in which the duty is stated. While we have expressed the view that the better statement would be to say that the master was required to use ordinary care in the discharge of these duties, it was not prejudicial error to give an instruction stating that it was the duty of the master to pro-

vide a suitable and reasonably safe place in which to work, etc. The two ways of expressing the master's duty in this particular are used interchangeably in the text-books and the decisions throughout the country and in this state. Frisco Lbr. Co. v. Thomas, 42 Okla. 670, 142 Pac. 310; Frederick Cotton Oil & Mfg. Co. v. Traver, 36 Okla. 717, 129 Pac. 747; Chickasaw Com. Co. v. Bow, supra.

There is no such conflict with this rule in paragraph 6 as would mislead the jury to defendant's prejudice. The court undertook therein to state in a hypothetical way all the facts alleged by plaintiff of which there. was any evidence, and to inform the jury of the duty owing by defendant to deceased, under such circumstances. It is a general rule upon reason and experience that instructions must be considered as a whole and construed together, and that no particular one should be singled out to the exclusion of another, and that where instructions when taken together and considered as a whole fairly present the law of the case, and there is no conflict between the different paragraphs thereof, this will be sufficient. Chickasaw Compress Co. v. Bow, supra; First Nat. Bk. Tishomingo v. Ingle, 37 Okla. 276, 132 Pac. 895; Muskogee Elec. Tr. Co. v. Rye, 47 Okla. 142, 148 Pac. 100.

Neither was paragraph 6 erroneous because the court failed to call attention therein to the defense of assumption of risk. This defense was submitted in another paragraph, and if correct that was sufficient. In support of this assignment, defendants cite the previous decisions of this court in Oklahoma Railway Co. v. Milam, 45 Okla. 742, 147 Pac. 314, and C., R. I. & P. Ry. Co. v. Clark, 46 Okla. 382, 148 Pac. 998, in each of which cases instructions were condemned because paragraphs thereof submitting plaintiff's theory of the case did not call attention to the defense of contributory negligence in connection therewith. The cases cited support defendant's contention, and if we adhere to that rule a reversal of this case would be necessary. Upon a re-examination of the question we are convinced that the above rule is correct, and the Milam Case and subsequent cases based thereon, in so far as they are in conflict with the rule here stated, should be and are hereby overruled.

The jury were instructed that a servant assumes the ordinary and incidental risks of his employment where its dangers are open to common observation and are as fully known to him as his employer, and he is as capable of knowing and measuring such dangers as his employer, and that the risk of the safety of the premises about which the employe works is not assumed by him unless he knows the danger or unless it is obvious. Whether this instruction was an invasion of the province of the jury, under section 355, Wms. Ann. Const., is not suggested by counsel, and we therefore do not determine this question. Otherwise the error therein, if any, consists in the fact that the rule is stated more favorably to the defendant than the true rule will warrant. Osage Coal Min. Co. v. Sperra, 42 Okla. 726, 142 Pac. 1040; Dewey Portland Cement Co. v. Blunt, 38 Okla. 182, 132 Pac. 659; M., O. & G. Ry. Co. v. Overmyre, 58 Okla. 723, 160 Pac. 933; C., R. I. & P. Ry. Co. v. Hughes, 64 Okla. 74, 166 Pac. 411.

While paragraph 8 of the charge was probably erroneous, in that it submitted to the jury the failure of defendant to warn deceased, yet as under the issues made in the pleadings and sustained by the evidence plaintiff was entitled to recover, and from an examination of the entire record we reach the conclusion that substantial justice has been done, we are precluded from reversing this case on account of the error, if any, in the giving of such instruction. Section 6005, Rev. Laws 1910.

The judgment is affirmed.